COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


ERWIN ALEXANDER EDWARDS

                                                        OPINION BY
v.        Record No. 1697-06-1                JUDGE D. ARTHUR KELSEY
                                                        MAY 22, 2007
COMMONWEALTH OF VIRGINIA



            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Wilford Taylor, Jr., Judge

                Charles E. Haden for appellant.

                Josephine F. Whalen, Assistant Attorney General (Robert F.
                McDonnell, Attorney General, on brief), for appellee.


        A jury convicted Erwin Alexander Edwards of distribution of cocaine, his second or

subsequent offense, in violation of Code § 18.2-248 and possession of cocaine in violation of

Code § 18.2-250.  On the morning of trial, Edwards requested that he be allowed to defend

himself *pro se*.  The trial court denied the request, finding Edwards competent to stand trial but

incompetent to represent himself.  Because the court applied an incorrect legal standard and,

consequently, failed to make factual determinations required by the correct standard, we vacate

the convictions and remand for further proceedings consistent with this opinion.

                                              I.

        The evidence at trial showed that police videotaped Edwards selling crack cocaine to a

confidential informant.  Edwards ran when police moved in to arrest him.  During his flight,

Edwards threw away the money the confidential informant paid him as well as another bag of

crack cocaine.  Edwards pled not guilty to possession and distribution charges.

The trial court appointed counsel to defend Edwards.  Lawyer after lawyer found it nearly impossible to represent Edwards.  In succession, his first three lawyers moved to withdraw, claiming conflicts of various sorts.  About his fourth lawyer, Edwards exclaimed in open court that the lawyer was "trying to railroad" him.  When the court expressed skepticism, Edwards retorted:  "You ain't the judge of me.  The jury is.  Get it right."  "That motherfucker [speaking of his fourth lawyer]," Edwards snarled, "Man, you're fired."  At that, the trial judge ordered Edwards out of the courtroom and granted the fourth attorney's request to withdraw.  A fifth lawyer was appointed, whom Edwards likewise rejected.  The court released this attorney as well and appointed a sixth lawyer to represent Edwards.

The day before trial, Edward "fired" his sixth lawyer, prompting counsel to file a motion to withdraw.  Edwards's belligerence, counsel explained, had irretrievably damaged the attorney-client relationship.  Edwards erupted with a verbal attack on his counsel, and the court again ordered Edwards removed from the courtroom.  The court then denied counsel's motion to withdraw, saying Edwards had delayed the proceeding long enough.  The trial would go forward the next day, the court ruled, with present counsel in attendance.

On the morning of trial, Edwards advised the court that he wanted to fire his counsel and "proceed without a lawyer today."  The court questioned Edwards to ensure he understood the "advantages of continued legal representation" and that, with or without counsel, there would be no continuance of the trial.  Edwards answered the court's questions, professing to appreciate the risks of *pro se* representation, his obligation to follow the rules, his inability to solicit assistance from the court, and his duty to behave in the courtroom.  After an extensive dialogue, the court concluded with the question:  "Now, you still want to represent yourself?"  "Yes," Edwards replied.  The court then held:

> Okay.  I'm not going to let you.  You're not competent to represent
> yourself.  Yes, I mean you're competent as an individual, but

you're not competent to handle a case before a jury that you can potentially get life in the penitentiary. *You need legal representation.* Based on your responses, I'm not going to do that. . . . [H]e had no legal training to understand motions and all the other things that he needs to be able to do, again, to defend himself in a case where he could potentially get life in the penitentiary. *My ruling is that he's not competent to represent himself. Competent to stand trial, but not to represent himself.*

After Edwards unsuccessfully asked the court to reconsider, the case proceeded to trial with the jury finding him guilty on both charges. Edwards filed a petition for appeal on several grounds. We granted an appeal solely on the question whether the trial court erred in denying his request for self-representation.[1]

## II.

### A. THE FARETTA RIGHT OF SELF-REPRESENTATION

The Sixth Amendment guarantees a criminal defendant "the Assistance of Counsel for his defence." U.S. Const. amend. VI. This textual right, it has been held, "implies" the concomitant right to be unassisted by counsel. Faretta v. California, 422 U.S. 806, 821 (1975). The unique right to appear *pro se*, known as the Faretta right, applies only when a defendant "truly wants to do so." Id. at 817. Because a *pro se* defense "usually increases the likelihood of a trial outcome unfavorable to the defendant," McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984), courts scrutinize the *bona fides* of the defendant's request as well as his manner of making it. Despite its constitutional rank, however, "the right to self-representation is not absolute." Martinez v. Court of Appeal, 528 U.S. 152, 161 (2000).

---

[1] We denied Edwards's petition for appeal seeking review of the trial court's denial of a pretrial suppression motion (Question I of the petition), the denial of a motion to strike made at trial (Question II of the petition), the admission of chain-of-custody evidence challenged by Edwards as insufficient (Question IV of the petition), and a denial of Edwards's request for admission into evidence of a warrant for his arrest (Question V of the petition).

To be successful, a Faretta request must be (i) timely, (ii) clear and unequivocal, and (iii) "voluntarily, knowingly, and intelligently made." Thomas v. Commonwealth, 260 Va. 553, 558, 539 S.E.2d 79, 82 (2000) (footnote omitted) (employing criteria outlined in United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000), which "detailed the requirements for a valid assertion of the right of self-representation"); see also United States v. Bush, 404 F.3d 263, 271 (4th Cir. 2005). Aware of the subterfuges that sometimes accompany Faretta requests, courts also insist that they not be used as a "tactic to secure delay," Stockton v. Commonwealth, 241 Va. 192, 203 & n.3, 402 S.E.2d 196, 202 & n.3 (1991), or "for disruption, for distortion of the system, or for the manipulation of the trial process," Frazier-El, 204 F.3d at 560 (citations omitted); see also United States v. Lawrence, 605 F.2d 1321, 1324-25 (4th Cir. 1979).

Consequently, a trial court may "deny a request for self-representation when the request is made for purposes of manipulation because, in such cases, the request will not be clear and unequivocal." Bush, 404 F.3d at 271. "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." Id. (quoting Frazier-El, 204 F.3d at 560). For the same reason, a defendant shifting "back and forth in his position with respect to self-representation" may be found to have "forfeited his right to self-representation by his vacillating positions." Stockton, 241 Va. at 203, 402 S.E.2d at 202 (quoting United States v. Bennett, 539 F.2d 45, 51 (10th Cir. 1976)); see also Bush, 404 F.3d at 272 (rejecting defendant's Faretta request as an "effort to manipulate and distort the trial process").

B. THE TRIAL COURT'S REASON FOR REJECTING EDWARDS'S REQUEST

In this case, the trial court did not address any of the traditional concerns governing the assertion of the Faretta right of self-representation. The court instead said, "My ruling is that

*he's not competent to represent himself.* Competent to stand trial, but not to represent himself." In context, the court meant Edwards was not legally capable of handling "a case before a jury" in which he could "potentially get life in the penitentiary." Edwards "had no legal training," the court noted, to help him understand the many "things that he needs to be able to do" to defend himself. "You need legal representation," the court advised Edwards.

At the outset, we take no issue with either the accuracy or the wisdom of the court's observations. As experienced trial judges know all too well, "a *pro se* defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney." Martinez, 528 U.S. at 161 (citing John F. Decker, The Sixth Amendment Right to Shoot Oneself in the Foot: An Assessment of the Guarantee of Self-Representation Twenty Years after Faretta, 6 Seton Hall Const. L.J. 483, 598 (1996)). The trial court's instinctual desire to protect Edwards from himself can hardly be criticized as irreflective. It was, nonetheless, legally irrelevant.

Under settled principles, a defendant's "technical legal knowledge" is not "relevant" to the Faretta judicial inquiry. Godinez v. Moran, 509 U.S. 389, 400 (1993) (quoting Faretta, 422 U.S. at 836); see also Thomas, 260 Va. at 560, 539 S.E.2d at 83. Though the defendant's choice to appear *pro se* may be "ultimately to his own detriment," it still "must be honored" no matter its imprudence. Thomas, 260 Va. at 560, 539 S.E.2d at 83 (quoting Faretta, 422 U.S. at 834). His legal "ability to represent himself has no bearing upon his competence to choose self-representation." Godinez, 509 U.S. at 400 (footnote omitted); see also Thomas, 260 Va. at 560, 539 S.E.2d at 83. Instead, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Godinez, 509 U.S. at 399 (footnote omitted). The trial court, therefore, erred by denying Edwards's Faretta request on the ground that he was not legally competent to represent himself.

## C.   RIGHT RESULT FOR THE WRONG REASON

That the trial court used erroneous reasoning does not mean, legally or logically, Edwards's Faretta request necessarily should have been granted.  A trial court can reach the right result, albeit for the wrong reason.  See, e.g., Whitley v. Commonwealth, 260 Va. 482, 492, 538 S.E.2d 296, 301 (2000); Blackman v. Commonwealth, 45 Va. App. 633, 642, 613 S.E.2d 460, 465 (2005).  The Commonwealth advances two reasons why, consistent with the correct legal standard, the Faretta request was properly denied.  We find neither persuasive.

### 1.   *Timeliness of Edwards's Pro Se Request*

As a matter of law, the Commonwealth asserts, Edwards waited too late to make a Faretta request.  We disagree.  A *pro se* request meets the timeliness requirement if made before "meaningful trial proceedings" have commenced.  Muhammad v. Commonwealth, 269 Va. 451, 502, 619 S.E.2d 16, 45 (2005) (adopting standard employed by United States v. Lawrence, 605 F.2d 1321, 1325 (4th Cir. 1979)).  "The federal courts which have examined the issue universally agree that an assertion of the right of self-representation, even as late as the morning of trial, is timely as a matter of law if it precedes the seating of the jury."  Thomas, 260 Va. at 559, 539 S.E.2d at 82 (citations omitted).  Though the timeliness requirement may "vary from case to case," id. (quoting Lawrence, 605 F.2d at 1325), we see no reason for any variance from the norm here.  Edwards made his Faretta request on the morning of trial, after his arraignment, but before *voir dire* of the jury or the introduction of the courtroom participants to the venire.  No principled basis exists for ruling as a matter of law that Edwards made his request too late.

Nor is there any suggestion that Edwards's request, though otherwise timely, was meant to throw off the timeliness of the trial itself.  A court may reject even a timely Faretta request when used as "a tactic to secure delay" of the trial, even if the defendant expressly disclaims any intent to do so.  Stockton, 241 Va. at 203 & n.3, 402 S.E.2d at 202 & n.3 (citing Fritz v.

Spalding, 682 F.2d 782, 784-85 (9th Cir. 1982)); see also Bush, 404 F.3d at 272; Frazier-El, 204 F.3d at 560; Lawrence, 605 F.2d at 1324. Here, however, Edwards requested permission on the morning of trial to "proceed without a lawyer today." The court's colloquy with Edwards reminded him there would be no continuance of the trial. Edwards said he understood but still wanted to represent himself. Given these facts, we cannot hold as a matter of law that Edwards's Faretta request would have affected the timeliness of the trial.

2. *Clear & Unequivocal — Voluntarily, Knowingly & Intelligently*

Even if timely, the Commonwealth contends, Edwards's Faretta request should have been denied because it was neither "clear and unequivocal" nor "knowingly, voluntarily, and intelligently" made. We find this argument plausible, but nevertheless one requiring in the first instance an exercise of factfinding discretion by the trial court.

Whether a Faretta request is "clear and unequivocal" involves much more than simply measuring how emphatically it has been asserted. See Frazier-El, 204 F.3d at 558-59. Even a perfectly clear request can rest upon an equivocation, pivoting a trial court on the thin line "between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." Id. (citation omitted); see also Stockton, 241 Va. at 203, 402 S.E.2d at 202 (holding defendant "forfeited his right to self-representation by his vacillating positions" (quoting Bennett, 539 F.2d at 51)).

In this respect, the "clear and unequivocal" requirement not only protects a defendant from inadvertent waivers stemming from "occasional musings" about self-representation, it "also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." Frazier-El, 204 F.3d at 558-59; see also Bush, 404 F.3d at 271. "In ambiguous situations created by a defendant's vacillation or manipulation, we

must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." Frazier-El, 204 F.3d at 559 (citations omitted); see also Bush, 404 F.3d at 271.

The voluntarily-knowingly-intelligently requirement addresses related concerns over the defendant's ability to understand the choice he is making. Before deciding to proceed *pro se*, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing." Iowa v. Tavor, 541 U.S. 77, 89 (2004) (quoting Faretta, 422 U.S. at 835). This requirement ensures the defendant "actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." Godinez, 509 U.S. at 401 n.12 (emphasis in original).

The Commonwealth argues the circumstances surrounding Edwards's Faretta request prove its equivocating nature and demonstrate he did not understand what he was doing. From this perspective, Edwards did not "truly" want to represent himself. See Faretta, 422 U.S. at 817. What he really wanted was to fire his sixth lawyer (having effectively dispatched the first five), and he only mentioned the *pro se* option as a means of securing that illegitimate goal. Taking the opposite perspective, Edwards claims he was wholly sincere in his desire to appear *pro se*, claiming it was the true source of his inability to maintain a working relationship with any of his prior court-appointed counsel. He had no intention of requesting substitute counsel; he simply wanted to proceed without any counsel.

Given its singular focus on legal competence, the trial court did not resolve the factual disputes inherent in the "clear and equivocal" and "knowingly, voluntarily, and intelligently" requirements. We certainly cannot do so on appeal. See Orndorff v. Commonwealth, 271 Va. 486, 505, 628 S.E.2d 344, 355 (2006) (finding "standard of appellate review" could not be

applied where "circuit court employed an improper legal standard in exercising its discretionary function"). Whether a defendant's in-court colloquy with a trial judge "clearly and unequivocally" invokes the right of self-representation involves factual determinations difficult, if not impossible, to make from a silent paper record. Fields v. Murray, 49 F.3d 1024, 1031 (4th Cir. 1995) (*en banc*). As the Fourth Circuit has explained:

> The clarity and unequivocality of a defendant's expression is determined not only by the words he speaks, but by his way of speaking them and his manner and demeanor when he is speaking; undeniably, the same words can express different degrees of certainty depending on how they are spoken. A transcript of the state trial court proceedings can reveal neither the way a defendant spoke when he indicated his desire to represent himself nor the manner and demeanor he assumed at the time of this indication.

Id.

For the same reason, "the trial judge has the duty to determine whether such a waiver is voluntarily and intelligently made, 'and it would be fitting and appropriate for that determination to appear on the record.'" Thomas, 260 Va. at 560, 539 S.E.2d at 83 (citation omitted). While we review the ultimate Sixth Amendment question *de novo*, the "trial court's factual findings are reviewed for clear error." Id.; see, e.g., Stockton, 241 Va. at 203 n.3, 402 S.E.2d at 202 n.3 (deferring to trial judge who concluded defendant's statement made in support of his *pro se* motion was "not made in good faith").

### D. APPELLATE REMEDY — SCOPE OF REMAND

When asked directly what remedy he seeks on appeal, Edwards's counsel confirmed that the "remedy he is seeking in this appeal is a retrial in his *pro se* capacity." "That's what he is asking for, that's what he wants," counsel stated. We cannot order that remedy, however, because the trial court never examined Edwards's Faretta request under the correct legal standard or made any of the required predicate factual findings. The right of self-representation, after all,

"entails a waiver of the right to counsel," Thomas, 260 Va. at 558, 539 S.E.2d at 82 (quoting Frazier-El, 204 F.3d at 558), a waiver of the sort we do not ordinarily presume. Nor can we simply review the facts *de novo*, as the Commonwealth seems to suggest, and reject as a matter of law Edwards's request for a *pro se* retrial.

Instead, we take a more measured approach. "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be *tailored to the injury suffered* from the constitutional violation and should not unnecessarily infringe on competing interests." United States v. Morrison, 449 U.S. 361, 364 (1981) (emphasis added); see also Rushen v. Spain, 464 U.S. 114, 118 (1983). A tailored remedy is "one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error." United States v. Carmichael, 216 F.3d 224, 227 (2d Cir. 2000). Thus, we must "identify and then neutralize the taint" by calibrating the judicial relief to the actual harm shown. Morrison, 449 U.S. at 365.

In this case, the actual harm is not simply that the trial court denied Edwards's Faretta request — but that it denied the request using an incorrect legal standard without making any of the predicate factual findings, one way or the other, required by the correct standard. In such circumstances, the proper appellate response is to vacate the convictions and remand the case to the trial court with instructions to conduct a hearing on the matter.[2]

---

[2] This remedy tracks the prevailing approach used in analogous situations. See, e.g., Murray v. United States, 487 U.S. 533, 543-44 (1988) (vacating and remanding with instructions for trial court to apply correct legal principles to facts presented by a suppression motion); United States v. Wade, 388 U.S. 218, 242 (1967) (vacating and remanding for trial court to apply correct legal standard in determining whether in-court identifications had independent origin); Orndorff v. Commonwealth, 271 Va. 486, 505, 628 S.E.2d 344, 355 (2006) (ruling the "proper remedy" was to remand the case to the trial court for "proper application" of the legal test); Thomas v. Commonwealth, 263 Va. 216, 233, 559 S.E.2d 652, 661 (2002) (vacating and remanding for trial court to "apply the proper test" when ruling on the motion).

If the trial court finds Edwards's request satisfies the <u>Faretta</u> requirements, the court should order a retrial so that Edwards may exercise his constitutional right of self-representation. <u>See</u>, <u>e.g.</u>, <u>People v. Carson</u>, 104 P.3d 837, 844 (Cal. 2005) (holding that retrial was required if trial court on remand finds defendant's <u>Faretta</u> right was violated).[3] If the court concludes, based upon facts previously presented and those offered upon remand, that Edwards's request fails the <u>Faretta</u> standard, the court should reinstate the convictions. <u>See</u>, <u>e.g.</u>, <u>Carson</u>, 104 P.3d at 844. In either event, Edwards retains his right of appeal from the final judgment on remand. <u>Id.</u>

### III.

We vacate Edwards's convictions and remand the case to the trial court for further proceedings consistent with this opinion.

<u>Vacated and remanded.</u>

---

[3] We do not mean to imply that Edwards cannot withdraw his <u>Faretta</u> motion on remand. He has that right. But that election, however, would moot the need for a retrial. If he were "represented by lawyers at any new trial, he would not have vindicated the right of self-representation upon which he premises his appeal from the denial of that right." <u>United States v. Johnson</u>, 223 F.3d 665, 669 (7th Cir. 2000). To be sure, if a defendant "wants on remand exactly what he had in his first trial, namely representation by competent lawyers, it is difficult to understand what he lost by the denial of his motion: he had at the first trial what he wants at the second." <u>Id.</u>

Humphreys, J., concurring, in part, and dissenting, in part:

Because I agree with the majority that the trial court erred in denying Edwards his constitutional right to self-representation, and because I also agree that the request to act *pro se* was timely made, I join in the majority's analysis in sections II(A), II(B), and II(C)(1). However, because I believe that there is ample support in the record to support the trial court's implicit finding that Edwards' decision to represent himself was made knowingly, voluntarily, and intelligently, I respectfully dissent as to sections II(C)(2) and II(D) of the majority opinion, and instead would remand for a new trial at which Edwards can exercise his constitutional right to represent himself.

The Commonwealth asks us to affirm the trial court's denial of Edwards' right to self-representation, arguing that Edwards' waiver was not voluntary, knowing, and intelligent.[4] The majority holds that in this case, the trial judge focused solely on "legal competence," and failed to make the requisite factual finding regarding the validity of the waiver. The majority states that "[w]hether a defendant's in-court colloquy with a trial judge 'clearly and unequivocally' invokes the right of self-representation involves factual determinations [that are] difficult, if not impossible, to make from a silent paper record." Accordingly, the majority holds that the "appropriate appellate response is to vacate the convictions" and remand for hearing to determine if the waiver was unequivocal, voluntary, knowing, and intelligent. In my view, the record is anything but silent with regard to Edwards' invocation of his right to self-representation. Accordingly, a fact-finding hearing is unnecessary, and I would thus reverse and remand for a new trial.

---

[4] The Commonwealth also argues that Edwards' request was not timely made. I agree with the majority's holding and analysis that this argument is without merit.

- 12 -

"An assertion of the right of self-representation [] must be (1) clear and unequivocal, (2) knowing, intelligent and voluntary, [and] (3) timely." United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000) (internal citations omitted). In order to be a clear and unequivocal request for counsel, the request must not be stated in uncertain terms or in an uncertain manner. See People v. Mogul, 812 P.2d 705, 709 (Colo. Ct. App. 1991). Here, Edwards asked the trial court, "is it any way I just sign my rights away and withdraw my counsel and represent myself as long as I don't disrupt and I understand what's going on and mentally I'm capable and I take the time, then may I represent myself? [sic]" The trial court then stated, "You just indicated to me this morning that you want to proceed without a lawyer today. Is that correct?" Edwards responded, "Yes, sir."

To determine whether the demand for self-representation is a valid, knowing, and voluntary waiver of the right to counsel, the court must engage the defendant in a conversation to explain the consequences of proceeding *pro se*, and to make the defendant aware of the dangers and disadvantages of self-representation. See Faretta v. California, 422 U.S. 806 (1975). It is only after such dialogue that a trial court can determine whether the waiver is knowing and voluntary, the request for self-representation is unequivocal, and the defendant "knows what he is doing and his choice is made with eyes open." Adams v. United States, 317 U.S. 269, 279 (1942) (citing Johnson v. Zerbst, 304 U.S. 458, 468-69 (1938)).

Here the record contains a long and specific colloquy between Edwards and the trial court regarding his request to represent himself. The trial court stated that, "before going any further, I want to be sure that you fully understand the consequences of what you are choosing to do." The trial court then asked Edwards his age and the highest grade in school that he completed. The trial court also acknowledged that it had reviewed Edwards' psychological evaluation regarding his competency to stand trial. Next the trial court asked Edwards if he was "familiar with this []

criminal justice system," if he knew and understood the charges against him and that he could get life in the penitentiary for his crimes, if he knew or had studied courtroom procedure, and if he knew that there were technical and legal issues which could affect his case. Edwards responded affirmatively to each question.

The trial court continually warned Edwards that "most people who are charged with serious crimes choose to be represented by counsel," that the court would appoint counsel if he so chose, that "in [his] experience, all [his] years on this bench, even lawyers in your position are represented by counsel," and that "while you may be legally competent to represent yourself, if you choose to do so, you do so at your own risk." The following discussion then took place:

> [TRIAL COURT]: Do you understand everything I have said to you?
>
> EDWARDS: Yes, I do, sir.
>
> [TRIAL COURT]: Any questions about what I said to you?
>
> EDWARDS: No, sir.
>
> [TRIAL COURT]: Now, you still want to represent yourself?
>
> EDWARDS: Yes.

The trial court persistently warned Edwards of the pitfalls of self-representation, and Edwards acknowledged that he understood the consequences of his choice to waive his right to counsel. Given this extensive colloquy between the trial court and Edwards regarding the disadvantages of exercising his right to self-representation, it cannot be said that his decision to act as his own attorney was anything but "knowing." There is not a single unequivocal response, nor is there any indication that Edwards is unsure of the consequences of his actions. Moreover, his repeated and unambiguous insistence that he wished to act as his own counsel amply demonstrates both the "unequivocal" and "voluntary" nature of his decision.

- 14 -

Finally, judges and attorneys are intimately familiar with the numerous rules and procedural intricacies that have evolved over time to ensure fairness and decorum in courtroom proceedings. Given our training and experience, it is often difficult — as it apparently was for the trial court here — to conclude that anyone who decides to represent their own interests in a courtroom on a serious criminal offense is making an "intelligent" decision. Nonetheless, in the context of constitutional jurisprudence, an "intelligent" decision means one that is "considered." See Faretta, 422 U.S. at 835 (stating "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." Thus, "although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (internal citations omitted)). Considering the trial court's explicit finding that he was competent to make such a decision, and considering the information Edwards had available to him when he made the decision, in my view, the record here supports only one reasonable conclusion. That is, that Edwards' decision was considered, deliberate, and therefore "intelligent."

Thus, contrary to the majority's assertion that we have a "silent record" regarding the validity of the waiver, I believe that the record fully supports the implicit factual finding that the trial court accepted Edwards' waiver as clear, unequivocal, knowing, intelligent, and voluntary. This finding is magnified by what the majority terms as the "trial court's instinctual desire to protect Edwards from himself," thus leading it to a "legally irrelevant" and erroneous conclusion. The inescapable conclusion is that the trial court denied Edwards his Sixth Amendment right to self-representation based solely upon the fact that it found Edwards lacking in the professional skills to "handle a case before a jury that you can potentially get life in the penitentiary." The

trial court summarized its laudable, but constitutionally infirm, reasoning by succinctly stating,

"You need legal representation."[5]

The record supports the conclusion that the trial court engaged in a sufficient dialogue

with Edwards to determine that Edwards' waiver of his right to self-representation was

---

[5] The majority contends that by focusing on "competence," the trial court erred in applying the correct legal standard for a <u>Faretta</u> inquiry. In the case relied upon by the majority, <u>Frazier-El</u>, 204 F.3d at 558, a trial judge found the defendant, Frazier-El "not competent because of arguments he made to represent himself." The Fourth Circuit stated,

> If this particular statement by the court was intended as an explanation for its refusal to permit Frazier-El to proceed *pro se*, as Frazier-El now contends, it was an error of law. <u>See</u> <u>Godinez [v. Moran]</u>, 509 U.S. [389,] 399 [(1993)] ("The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself"); <u>Faretta</u>, 422 U.S. at 836 (defendant's technical legal knowledge "not relevant to an assessment of his knowing exercise of the right to defend himself"). But we must assume that the court's statement . . . refers only to the legitimacy of the request and the arguments advanced, rather than to Frazier-El's ability to make a knowing election of self-representation and waiver of counsel. This assumption is confirmed by what the court said next: "Frazier-El understands the nature of the proceedings and is able, if he so desires — he is an intelligent man — to assist in his own defense, if he so desires."

<u>Id.</u> at 560-61. In other words, the Fourth Circuit affirmed the trial court's denial of Frazier-El's request because "[t]he circumstances surrounding Frazier-El's purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation." <u>Id.</u> at 560. Thus, taking the record as a whole, the trial court was "justified, when confronted with Frazier-El's vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-El proceed with appointed counsel." <u>Id.</u>

Unlike in <u>Frazier-El</u>, there is no finding by the trial court that Edwards' request was an attempt to manipulate the system. Although he had been represented by several lawyers, and was difficult to get along with, the record does not reflect that his request was used as a tactic for delay, <u>see</u> <u>United States v. Lawrence</u>, 605 F.2d 1321, 1324-25 (1979), for disruption, <u>see</u> <u>Faretta</u>, 422 U.S. at 834 n.46, for distortion of the system, <u>see</u> <u>United States v. Singleton</u>, 107 F.3d 1091, 1102 (1997), or for manipulation of the trial process, <u>see</u> <u>Lawrence</u>, 605 F.2d at 1325. Accordingly, we can assume that the trial judge found that the waiver was valid, but denied Edwards the right to self-representation based solely upon Edwards' lack of legal expertise.

unequivocal, voluntary, knowing, and intelligent. But see Commonwealth v. Chapman, 392

N.E.2d 1213, 1218 (Mass. App. Ct. 1979) (reversing and remanding because the trial court made

no effort to inquire into the circumstances of the defendant's assertion of his *pro se* right, nor did

it establish on the record any legitimate basis for denying the defendant's request); State v.

Thornblad, 513 N.W.2d 260, 264 (Minn. Ct. App. 1994) (reversing and remanding for a new trial

because the district court's inquiry was not sufficient to determine that the defendant's waiver of

the right to the assistance of counsel was not knowing and intelligent). Because I believe that the

trial court implicitly found that Edwards validly asserted his constitutional right to represent

himself, the trial court erred in denying him that right based solely upon the potential life

sentence and the trial court's perception of his "need" for representation. Accordingly, I believe

a hearing to determine the validity of Edwards' waiver is unnecessary. He has validly and timely

waived his Sixth Amendment right to counsel, and I would simply remand for a new trial at

which Edwards should be permitted to represent himself.[6]

---

[6] Many other jurisdictions reverse and remand for a new trial to remedy a trial court's error in denying a defendant his Sixth Amendment right to self-representation. See Akins v. State, 955 S.W.2d 483 (Ark. 1997); Colorado v. Mogul, 812 P.2d 705 (Colo. Ct. App. 1991); Stigars v. Delaware, 674 A.2d 477 (Del. 1996); Michigan v. Overby, 247 N.W.2d 857 (Mich. 1976); Thornblad, 513 N.W.2d 260.