COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia

JAMES L. ROBERTSON

                                     MEMORANDUM OPINION* BY
v.        Record No. 0017-17-2           JUDGE RANDOLPH A. BEALES
                                       NOVEMBER 7, 2017

KATISHA L. ROBERTSON

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Joseph M. Teefey, Jr., Judge

Brandy M. Poss (DeFazio Bal, P.C., on brief), for appellant.

No brief or argument for appellee.

UNPUBLISHED

James L. Robertson ("husband") presents nine assignments of error to this Court.

Husband appeals the circuit court's valuation and distribution of marital property, the circuit

court's award of spousal support to Katisha L. Robertson ("wife") in the amount of $1,594 per

month, and an award of child support to wife in the amount of $884 per month. In addition,

husband appeals the circuit court's entry of the December 7, 2016 "Order of Equitable

Distribution[,] Child Custody[,] and Child and Spousal Support" because he claims that the

circuit court purportedly entered that order before the parties finished presenting their evidence.

Similarly, husband appeals the circuit court's denial of his motion to vacate and leave to file a

motion to reconsider. Finally, husband appeals the circuit court's award to wife of $10,000 in

attorney's fees, and he further asks this Court to award him his attorney's fees and costs related

to this appeal. For the reasons that follow, we affirm the circuit court in part, reverse in part, and

remand for further proceedings consistent with this opinion.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

Dissolution of the Marriage and Pretrial Matters

Under settled principles of appellate review, we view the evidence in the light most favorable to wife, as we are required to do because she is the party prevailing below. Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008). "That principle requires us to discard the evidence of [husband] which conflicts, either directly or inferentially, with the evidence presented by [wife] at trial." Hamad v. Hamad, 61 Va. App. 593, 596, 739 S.E.2d 232, 234 (2013) (quoting Owens v. Owens, 41 Va. App. 844, 848-49, 589 S.E.2d 488, 491 (2003)).

So viewed, husband and wife were married on March 7, 1997 and had three children. Throughout the marriage, husband was employed as a soldier in the United States Army. Given his length of service, husband receives a military pension, and he also receives partial disability benefits due to mental health issues that are related to his military service. During the marriage, husband was the primary financial provider for the family, and wife made substantial non-monetary contributions by rearing the children and caring for the home. Wife's non-monetary contributions enabled husband to advance in his career. The parties separated on March 6, 2014 with the intent to terminate the marriage. The circuit court found the marriage broke down as the result of husband's extramarital affair. Husband had also fathered a child out of wedlock while married to wife.

Prior to trial, counsel for both husband and wife withdrew from the case, resulting in several continuances. While wife secured new counsel, husband chose to continue *pro se*. Husband delayed the proceedings by failing to adequately respond to wife's discovery requests and abide by the circuit court's orders. Ultimately, the circuit court sanctioned husband for

failure to comply with an order to compel and with the court's pretrial order.[1]  In imposing these sanctions, the circuit court remarked on the record, "Mr. Robertson, the Court finds that you're playing games."

Evidentiary Hearings

The circuit court conducted two evidentiary hearings on June 14, 2016 and on October 28, 2016.  At the June hearing, wife submitted evidence of the parties' marital property through the adverse testimony of husband.  Wife submitted an account statement of husband's Fidelity individual retirement account (IRA), dated December 29, 2015.  That statement showed husband owned 63.9370 shares at a per-share price of $12.60 and that $16,560 had been "invested to date" in the account.  Wife also submitted husband's responses to her first set of interrogatories as further evidence of the value of husband's Fidelity IRA; these interrogatory responses also provided evidence of the value of three Liberty Insurance life insurance policies purchased for the parties' children and the value of the parties' household furnishings.  In response to Interrogatory 3,[2] husband admitted the value of his Fidelity IRA was $880.06 on July 9, 2015.  In response to Interrogatory 6,[3] husband admitted that the parties owned three life insurance

---

[1] At the beginning of the June 14, 2016 hearing, the circuit court sanctioned husband for failure to comply with the court's order compelling him to provide wife with information regarding his income and retirement benefits.  The circuit court awarded attorney's fees to wife and precluded husband from offering evidence of his income and retirement benefits at trial.  The circuit court also sanctioned husband for his failure to abide by the circuit court's pretrial order by failing to timely provide opposing counsel with copies of his witness and exhibit lists.  As a result, the circuit court precluded husband from presenting evidence through his witnesses and exhibits.  However, the circuit court stated that husband could still offer evidence through his testimony.

[2] That interrogatory stated, "List any mutual funds, stocks, savings bonds, mutual bonds, or other securities or investment funds owned by you alone or jointly with another, giving a description of the asset, the owner(s), the date and how acquired, value on the date of separation, and present value."

[3] That interrogatory stated, "List any life insurance policies owned by you, giving the name and address of the company, type of policy, on whose life obtained, policy number,

- 3 -

policies for their children. Each policy was described as "whole life" with a value of $25,000. Husband also testified that these policies were "paid up." In response to Interrogatory 7,[4] husband estimated that the separate value of the parties' household furnishings totaled $17,500.

Through husband's adverse testimony, wife also submitted evidence of husband's monthly income, which consisted primarily of his military pension and disability benefits. Husband's retiree account statement showed he receives $3,982 per month in gross military pension pay and $2,395.87 per month in Concurrent Retirement and Disability Pay ("CRDP") from the U.S. Department of Veterans Affairs (VA), sum totaling $6,377.87. Following direct examination by wife's counsel, husband declined the opportunity to offer further testimony at that time, instead opting to testify during his case in chief.

Relevant to the issue of child support, wife testified that the parties' two minor children[5] received social security benefits in the amount of $310 per month and $465 per month. These benefits were based on husband's disability status. Wife also submitted evidence of her attorney's fees.

The record confirms that husband had the opportunity to cross-examine wife and each of her witnesses during both evidentiary hearings. During the June hearing, husband's cross-examination of wife was extremely brief despite his having a full opportunity to do so; in fact, husband's examination of wife was so brief that the court confirmed he was finished. The

---

beneficiary, loans made against the policy within the last five years, the face value, and the cash surrender value."

[4] That interrogatory stated, "List the household furnishings or personal effects having an estimated value in excess of $500 per item or set owned by you alone or jointly with another, and the estimated value."

[5] As of the date of the first evidentiary hearing, June 14, 2016, the parties' eldest son, J.R., had reached the age of eighteen.

court stated, "I don't want to cut you off. Are you sure?" After that inquiry, husband briefly continued before indicating a second time that he had no further questions.

At the conclusion of the June hearing, the court granted wife a divorce, pursuant to Code §§ 20-91(A)(9) and 20-121.02 on grounds of the parties' having lived separate and apart in excess of twelve months. Based upon husband's failure to disclose information of his income and retirement benefits during discovery, the circuit court retained jurisdiction over the issues of equitable distribution, spousal support, child support, and attorney's fees. The court continued the matter for the limited purpose of receiving further evidence on husband's income and retirement benefits. The court also entered two orders requiring the VA and Defense Finance Accounting Service ("DFAS") to produce records pertinent to husband's compensation, benefits, and retirement income.

On October 28, 2016, the Court conducted its second evidentiary hearing to receive further evidence of husband's income and retirement benefits. During the hearing, neither party was represented by counsel, and neither party submitted new evidence on husband's income and retirement benefits. Before the conclusion of the hearing, wife attempted to offer evidence of husband's separate property. While the circuit court did not admit this evidence into the record, the court set a November 16, 2016 hearing, presumably for the purpose of determining whether the property in question was titled in husband's name. Subsequently, that hearing was cancelled for reasons not apparent in the record.

The December 7, 2016 Order and Husband's Post-Trial Filings

On December 7, 2016, the circuit court entered its "Order of Equitable Distribution[,] Child Custody[,] and Child and Spousal Support" based upon the evidence it received during the June and October evidentiary hearings. The circuit court ordered that the "Fidelity IRA valued at $16,560.00 titled in [husband's] name shall be divided 50% to the [husband] and 50% to the

- 5 -

[wife]." And, the "Liberty Insurance whole life policies with cash value of $75,000.00 shall be divided 50% to [husband] and 50% to [wife]." The court valued the parties' household furnishings at $17,500 and ordered that those items "shall be retained by [husband] . . . [who] shall pay [wife] a judgment in the amount of $8,750.00 for her share of this personal property." Finally, the court awarded "[wife] one-half of the marital share of [husband's] pension or retirement income from his former [military] employment as a soldier in the United States Army."

The circuit court awarded $1,594 in spousal support and $884 in child support to wife based upon its determination that husband's gross monthly income was $6,377 from his "disability and veteran's benefits" and wife's gross monthly income was $1,067 from "part-time wages paid hourly for retail sales employment."

On December 20, 2016, with the assistance of counsel, husband filed a "Motion to Vacate and Leave to File a Motion to Reconsider." Counsel argued that husband was "under a significant mental impairment," during the October hearing. As a result, "[husband] was unfit to testify on his own behalf." On December 21, 2016, the circuit court denied husband's motion and noted "[husband] was before the Court seventeen times for hearings and scheduling of hearings . . . [and] [t]he Court encouraged [husband] to retain counsel during nearly all of the seventeen hearings." Despite the circuit court's recommendation, husband chose to proceed *pro se* – and to present evidence, cross-examine witnesses, make objections, and present argument himself. In short, "[t]he Court was able to observe [husband] and found no reason to believe that he was unable to understand the proceedings." On December 28, 2016, husband's counsel filed a list of objections to that order. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Husband raises five assignments of error (and several subparts) pertaining to the issues of equitable distribution, spousal support, and child support. Husband acknowledges on brief that each issue is reviewed on appeal for an abuse of discretion by the circuit court. Under this deferential standard of review, this Court must "show enough deference to a primary decision maker's judgment that the [appellate] court does not reverse merely because it would have come to a different result in the first instance." Lawlor v. Commonwealth, 285 Va. 187, 212, 738 S.E.2d 847, 861 (2013) (quoting Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008)). "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (quoting Hernandez-Guerrero v. Commonwealth, 46 Va. App. 366, 370, 617 S.E.2d 410, 412 (2005)). "Accordingly, 'when a decision is discretionary . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Lawlor, 285 Va. at 212-13, 738 S.E.2d at 861 (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)). Finally, discretionary decisions "will not be reversed on appeal unless plainly wrong or unsupported by [credible] evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).

In addition, as a preliminary matter, husband chose to represent himself at both evidentiary hearings. This Court has stated, "Though the defendant's choice to appear *pro se* may be 'ultimately to his own detriment,' it still 'must be honored' no matter its imprudence." Edwards v. Commonwealth, 49 Va. App. 727, 736-37, 644 S.E.2d 396, 400 (2007) (quoting Thomas v. Commonwealth, 260 Va. 553, 560, 539 S.E.2d 79, 83 (2000)). Furthermore,

husband, as a *pro se* litigant, must comply with the same rules as an attorney in conducting his case. See Francis v. Francis, 30 Va. App. 584, 591, 518 S.E.2d 842, 846 (1999) ("Even *pro se* litigants must comply with the rules of court."). His choice to appear *pro se* in the trial court does not entitle him to preferential treatment in that court or on appeal.

In this appeal we address the matters of equitable distribution, spousal support, and child support in that order. See Frazer v. Frazer, 23 Va. App. 358, 381, 477 S.E.2d 290, 301 (1996) ("The trial court should follow a three-step process in resolving [these] issues . . . the court should first determine equitable distribution, then spousal support, and finally child support.").

### B. EQUITABLE DISTRIBUTION

Husband assigns error to three aspects of the circuit court's equitable distribution of the parties' marital property.[6] We address each issue in turn.

Husband's fifth assignment of error argues that the circuit court abused its discretion by valuing the husband's Fidelity IRA at $16,560[7] and ordering husband to pay 50% of that value to wife. Because the circuit court is plainly wrong about the value of that account as of the hearing date, we remand the matter to the circuit court to determine the proper value (and distribution) of that account.

---

[6] In his fifth assignment of error, husband argues that "The court erred in valuing Husband's Fidelity IRA at $16,500 and in awarding Wife 50% of such value." Husband's sixth assignment of error states, "The court erred in valuing the Liberty Insurance life insurance policies by finding the policies had a cash value of $75,000 and in awarding Wife 50% of such value." Husband's seventh assignment of error states, "The court erred in valuing the parties' personal property in storage under Husband's name at $17,500 and in ordering Husband to pay Wife a judgment in the amount of $8,750 for her share of the personal property." None of these assignments of error challenge the circuit court's classification of the subject property as marital; therefore, we only consider whether the circuit court abused its discretion in its valuation and distribution of the property.

[7] We note that the circuit court's December 7, 2016 order valued husband's Fidelity IRA at $16,560, rather than the "$16,500" that is stated in husband's fifth assignment of error. As such, we view husband's use of "$16,500" as a scrivener's error and proceed with the valuation given in the circuit court's order.

Code § 20-107.3 states:

> [T]he court . . . shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties . . . . The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.

"The value of property is an issue of fact, not of law [and] we are bound by this finding on appeal, unless it is plainly wrong or without evidence to support it." Patel v. Patel, 61 Va. App. 714, 722, 740 S.E.2d 35, 39 (2013) (internal quotations and citations omitted).

Here, the only evidence of the value of husband's IRA came from wife in the form of an account statement dated December 29, 2015 and husband's responses to wife's interrogatories. The statement showed the account contained 63.9370 shares and a share price of $12.60, which would indicate a value of the account of approximately $805 – far below what the trial court established. The statement also indicated that the total amount "invested to date" was $16,560; however, nothing on the statement indicated that the value of the account at the time of the hearing date was $16,560. Even if the amount "invested to date" was $16,560, the amount "invested to date" over the time of the account is no indication of its current value as of the hearing date. In addition, husband's answer to Interrogatory 3, which requests information on husband's stocks and investments, indicates the account had a balance of $880.06 as of July 9, 2015. Because the circuit court is plainly wrong in its valuation on the hearing date of husband's Fidelity IRA, we conclude that the circuit court erred in its valuation (and distribution) of the IRA. Accordingly, we reverse and remand this issue to the circuit court for the limited purpose of revaluing (and then redistributing) husband's Fidelity IRA.

Next, husband's sixth assignment of error challenges the circuit court's "valuing the Liberty Insurance life insurance policies by finding the policies had a cash value of $75,000 and

in awarding Wife 50% of such value." We disagree with husband and affirm the circuit court on this assignment of error.

Here, the only evidence of the value of the policies was offered by wife. Husband chose not to present his own evidence to dispute the fact that the total value of these policies was $75,000. Husband's answer to wife's Interrogatory 6 states:

> Liberty National Life Insurance Company – Policies obtained 06/01/05
> [J.R.] – Policy . . . Whole Life: $25,000.00
> [Q.R.] – Policy . . . Whole Life: $25,000.00
> [S.R.] – Policy . . . Whole Life $25,000.00

Other than this interrogatory response, the only evidence presented at trial on the life insurance policies was husband's testimony that the policies were "paid up." On brief, husband contends that wife failed to meet her burden of proof on this issue. Husband also appears to accuse the circuit court of engaging in "mere guess work." However, this Court can only address the record that is before us, and the record contains no evidence to support husband's contention. Based on the record before us, we cannot say that the circuit court abused its discretion because there was credible evidence within the record to support its conclusion that the insurance policies were worth $75,000 and that wife was entitled to 50%. We therefore affirm the circuit court.

Finally, regarding the valuation of the parties' household furnishings, husband's seventh assignment of error contends that the circuit court erred in valuing that property at $17,500 and in ordering husband to pay wife $8,750 for her share of that property. Similar to husband's argument on his sixth assignment of error, husband challenges the sufficiency of wife's evidence. Husband's response to wife's Interrogatory 7 valued the sum of the household furnishings at $17,500 – the exact value the circuit court assigned to this property. Husband argues that his answer to the interrogatory is somehow unreliable because the answer was given approximately ten months before the June hearing. However, because there was evidence in the record to

- 10 -

support the circuit court's valuation of the parties' household furnishings, we cannot say that the circuit court abused its discretion in affixing a value of $17,500 to the property and awarding wife $8,750 of that amount.

## C. AWARD OF SPOUSAL SUPPORT TO WIFE

Husband's fourth assignment of error argues that the circuit court erred in "awarding Wife spousal support in the amount of $1,594 per month." We agree the circuit court erred, and we reverse the award and remand the matter to the circuit court for a redetermination of spousal support.

Code § 20-107.1(E) lists the factors a circuit court must consider in making an award of spousal support. See Robinson v. Robinson, 54 Va. App. 87, 91, 675 S.E.2d 873, 875 (2009) ("In making that determination [of spousal support], the trial court 'must consider all the factors enumerated in Code § 20-107.1(E)'" (quoting Fadness v. Fadness, 52 Va. App. 833, 846, 667 S.E.2d 857, 863 (2008))). One factor the circuit court must consider is "[t]he obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature." Code § 20-107.1(E)(1). Another factor is "[t]he provisions made with regard to the marital property under § 20-107.3," pertaining to the equitable distribution of marital assets. Code § 20-107.1(E)(8). In addition, this Court has held that military pensions that are marital property subject to equitable distribution must be considered when making a spousal support award. See Sawyer v. Sawyer, 1 Va. App. 75, 78, 335 S.E.2d 277, 280 (1985) ("Our reading of [Code § 20-107.3] leads us to conclude that the legislature intended all pensions, including military pensions, to be personal property and subject to equitable distribution.").

The circuit court's December 7, 2016 order states, "The [husband] shall pay $1,594 per month for spousal support of the [wife] payable on the first day of each month starting January 1,

2017, and continuing until modified by a court of competent jurisdiction." In making this award, the circuit court discussed the statutory factors and found "that the [husband] has gross income from all sources including disability and veteran's benefits in the monthly amount of $6,377.00." This amount, $6,377, was husband's monthly income from his *full* military pension and CRDP income. However, later in that same order, the circuit court explicitly stated that it "award[ed] [wife] one-half of the marital share of [husband's] pension or retirement income from his former employment as a soldier in the United States Army." Thus, the circuit court acted within its discretion when it awarded wife 50% of the marital share of husband's military pension. See id. However, we find that the circuit court abused its discretion in making its spousal support award when it failed to account for the effect of the equitable distribution award of half of the marital portion of husband's monthly military pension income when calculating husband's total monthly income for determining spousal support. See Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997) ("In determining spousal support, the commissioner and trial court must consider all factors contained in Code § 20-107.1; failure to do so constitutes reversible error." (citing Woolley v. Woolley, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986))). Accordingly, we reverse the circuit court's spousal support award and remand it for reconsideration of spousal support (and of husband's total monthly income) consistent with this opinion.

### D. AWARD OF CHILD SUPPORT TO WIFE

Husband's third assignment of error (and its five subparts) claim that the circuit court erred in awarding wife $884 per month in child support.[8]

---

[8] That assignment of error states,

> The court erred by awarding Wife child support in the amount of $884.00 per month.
>
> a. The court's order is so unclear it cannot be determined from the four corners of the order how precisely child support was calculated.

- 12 -

The third subpart of this assignment of error claims that the circuit court erred in finding husband's income was $6,377 per month for the purpose of calculating child support. Our remanding the issue of spousal support will logically result in a change to the parties' gross incomes, and, therefore, those changes will necessitate the recalculation of the child support award. See Frazer, 23 Va. App. at 381, 477 S.E.2d at 301 ("Because in determining child support under Code § 20-108.2(C), the trial court must include spousal support in the gross income of the receiving spouse and must deduct the amount of spousal support from the gross income of the paying spouse, the court should first determine equitable distribution, then spousal support, and finally child support."). We therefore find that the trial court also erred in

b. The court's order does not contain any child support guideline worksheet. The court did not state [if] the amount of child support awarded resulted from the application of the guidelines set out in Virginia Code § 20-108.2. The court did [not] make written findings in the order as set out in Virginia Code § 20-108.1, or by reference, that the application of the guidelines would be unjust or inappropriate as determined by relevant evidence pertaining to the factors set out in Virginia Code § 20-108.1. The court erred in failing to calculate the presumptive amount of child support and failing to provide a written explanation in the order or by reference for a deviation from the child support guidelines.

c. The court erred in finding Husband's income was $6,377 per month.

d. The court erred by failing to give Husband a credit against his ongoing basic child support obligation for the amount of social security benefits paid to or for the children and derived by the children from Husband. The court should have imputed as income to Husband the social security benefits received by the children and credited his child support obligation by the amount of those benefits. Husband should have also received a credit for the social security payments previously paid against any child support arrearage.

e. The court erred by failing to deduct from Husband's gross income the amount of child support husband pays pursuant to an order for the support of a child who is not a child subject to the parties' proceeding, as required by Virginia Code § 20-108.2(C).

- 13 -

determining child support, reverse on the third subpart of Assignment of Error 3, and remand the issue of child support to the circuit court.

The fourth subpart of Assignment of Error 3 claims that the circuit court erred by failing to credit husband's child support obligation by the amount of the social security benefits received by the parties' two minor children as a result of husband's disability. This Court has previously held that social security benefits paid to children, which are derived from a parent's disability status, entitle that parent to a credit against his child support obligation. Whitaker v. Colbert, 18 Va. App. 202, 205-06, 442 S.E.2d 429, 431-32 (1994).

Here, evidence in the record showed that the parties' two minor children receive social security benefits in the amounts of $310 per month and $465 per month. These benefits are paid to the children based upon husband's disability status. However, the circuit court's December 7, 2016 order does not make any written findings, as required by Code § 20-108.1, to indicate that the circuit court deviated from the presumptive child support amount provided for in Code § 20-108.2. Code §§ 20-108.1(B), 20-108.2. From the record before us, we can only conclude that the circuit court simply did not consider the social security benefits paid to the children when making its child support award. Accordingly, we reverse the circuit court on this point as well and remand the issue of child support to the circuit court for recalculation consistent with this opinion.

On the fifth subpart of husband's Assignment of Error 3, husband argues that the circuit court failed to consider the amount of child support payments he pays for his child born out of wedlock when deciding the child support he must pay to wife. See Code § 20-108.2(C)(4). The record shows that, during the June hearing, husband testified under direct examination about the existence of a child born out of wedlock. However, during his case in chief, husband failed to present any evidence showing the amount of such payments (and even whether he has actually

made them). Therefore, we cannot say that the circuit court abused its discretion by not considering if husband has a support obligation for a child not born of his marriage to wife. We therefore affirm the circuit court on the fifth subpart of husband's Assignment of Error 3.

Finally, we choose not to address the first and second subparts on husband's third assignment of error. Because we will remand the issue of child support on the third and fourth subparts of this assignment of error, there is no need to address the first two subparts of the third assignment of error.

### E. CANCELLATION OF THE NOVEMBER 16, 2016 HEARING

Husband argues in his first assignment of error[9] that the circuit court abused its discretion by entering the December 7, 2016 order without permitting the parties to finish presenting their evidence.

A circuit court has a broad range of discretion in deciding the best way to manage a trial. "Accordingly, 'when a decision is discretionary . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Lawlor, 285 Va. at 212-13, 738 S.E.2d at 861 (quoting Landrum, 282 Va. at 352, 717 S.E.2d at 137).

On brief, husband argues that the circuit court's cancellation of the November 16, 2016 hearing prevented the parties from finishing the presentation of their evidence, particularly

_____

[9] Husband's first assignment of error states,

> The court erred by ruling on equitable distribution, spousal support, attorney's fees, and child support before the parties finished presenting their evidence. The court continued the parties' case for a hearing on November 16, 2016. However, the court cancelled the November 16 hearing and ruled in the matter without affording the parties an opportunity to finish prosecuting their case. In doing so, the court improperly prevented Husband from presenting evidence and cross-examining the Wife.

evidence pertaining to husband's income and retirement benefits. Husband further contends that the circuit court's cancellation of the hearing impermissibly limited his ability to cross-examine wife. In arguing that the circuit court abused its discretion, husband cites to this Court's opinions in Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987) ("The court may not refuse or fail to give parties a reasonable opportunity to develop and present evidence . . . ."), and Campbell v. Campbell, 49 Va. App. 498, 504, 642 S.E.2d 769, 772 (2007) ("Virginia has recognized a fundamental right to cross-examination on a matter relevant to the litigation, which applies in civil cases."). While we do not disagree with these statements of law cited by husband, we disagree with husband's characterization of the record.

Here, viewing the record in the light most favorable to wife, as we must because she was the prevailing party in the trial court, the record shows that the circuit court went to great lengths to give husband and wife an opportunity to present evidence. The circuit court conducted two evidentiary hearings, one in June and one in October. During the June hearing, wife availed herself of the opportunity to submit evidence pertinent to the issues of equitable distribution, spousal support, and child support. Husband, owing to the sanctions imposed by the circuit court, had the opportunity to present evidence on each issue through his testimony. Regarding husband's ability to cross-examine wife and her other witnesses, the record shows that husband had the chance to do so at both the June and October hearings. In fact, at one point during the June hearing, the circuit court went so far as to confirm husband was completely finished with his cross-examination of wife before moving forward.

The record contains no explanation as to why the November 16, 2016 hearing was cancelled, and this Court will not speculate as to the reason. However, it is clear from the record that a major purpose for that hearing was to receive evidence related to husband's *separate* property, and separate property, of course, was not subject to the court's equitable distribution.

The record further shows that the circuit court concluded the October hearing when neither party had additional witnesses to call or evidence to present pertaining to husband's income and retirement benefits. Thus, after more than two years of contentious litigation in the trial court, multiple motions hearings, and two evidentiary hearings, we cannot say that the circuit court abused its discretion by entering the December 7, 2016 order.

### F. DENIAL OF HUSBAND'S MOTION TO VACATE

Husband's second assignment of error contends that the circuit court abused its discretion by "denying Husband's Motion to Vacate the December 7, 2016 Order of Equitable Distribution[,] Child Custody[,] and Child and Spousal Support and Leave to File a Motion to Reconsider." In his motion, husband argued through counsel that he was not competent to represent himself during the October hearing. However, in reviewing the record, we find that the circuit court did not abuse its discretion. As the Court noted in its December 21, 2016 order, "[husband] was before the Court seventeen times for hearings and scheduling of hearings . . . [and] [t]he Court encouraged [husband] to retain counsel during nearly all of the seventeen hearings." Furthermore, "[t]he Court was able to observe the [husband] and found no reason to believe that he was unable to understand the proceedings" based upon his presenting evidence, cross-examining witnesses, making objections, and presenting argument. Quite to the contrary, the record shows that the trial court was in the best possible position to observe husband and determine his ability to understand the proceedings. Accordingly, we cannot say the trial court abused its discretion in denying husband's motion to vacate.

## G. Attorney's fees

Finally, husband assigns error to the circuit court's award of attorney's fees to wife and asks this Court to grant him an award of attorney's fees related to this appeal.[10]

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Here, we affirm the circuit court and deny husband's request. Viewing the record as we must, in the light most favorable to wife as the party that prevailed below, it is apparent that a great deal of delay was based solely on what the trial court described as husband's "playing games." Husband refused to timely comply with the circuit court's orders which led to his being sanctioned twice by the circuit court, and it also resulted in the matter dragging on for months longer than it needed to do so. All of these delays resulted in additional legal expenses to wife. Therefore, we cannot say that the circuit court abused its discretion in awarding wife $10,000 in attorney's fees, and we will not disturb that award. Furthermore, as husband only prevails on appeal on several of his nine assignments of error, we deny husband's request of an award of attorney's fees related to his appeal to this Court.

## III. Conclusion

In summary, on husband's fifth assignment of error, we reverse the circuit court because the circuit court's valuation (and distribution) of husband's Fidelity IRA was plainly wrong. On husband's fourth assignment of error, we reverse the circuit court's spousal support award because the court abused its discretion by failing to consider the equitable distribution of husband's military pension in considering the parties' gross incomes and in then making the

---

[10] Husband's eighth and ninth assignments of error state, respectively, "The court erred in awarding Wife attorney's fees in the amount of $10,000," and "Husband should be awarded his attorney's fees and costs related to this appeal proceeding. O'Loughlin v. O'Loughlin, 23 Va. App. 690, 470 S.E.2d 98 (1996)."

spousal support award.  On husband's third assignment of error, we reverse the circuit court

because the recalculation of spousal support – and the court's need to consider social security

benefits paid to the parties' children as a result of husband's disability – will require the

recalculation of child support.  We remand each of these issues to the circuit court for further

proceedings consistent with this opinion based on the current record.  Finally, we affirm the

circuit court on husband's remaining assignments of error and deny husband's request for

appellate attorney's fees.

Affirmed in part, reversed and remanded in part.