UNITED STATES of America, Appellee,

v.

Austine F. DOE, Appellant.

No. 82–5164.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1984.

Decided Aug. 27, 1984.

Sebastian K.D. Graber, Alexandria, Va., for appellant.

Barbara B. Anthony, Sp. Asst. U.S. Atty. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge.

Defendant, a taxi driver who was convicted of a violation of the "obey all signs" requirement of 14 C.F.R. § 159.2(b)(3)[1] at Washington National Airport, seeks to overturn his conviction on the ground that the magistrate hearing his case failed in a number of instances to comply with the requirements of Rule 2(b) of the Rules of Procedure for Trial of Misdemeanors before United States Magistrates (hereinafter "Misd. R."). While we conclude that the letter and spirit of the rule were not observed in several respects, we are nevertheless persuaded that defendant was not prejudiced by any failures on the part of the magistrate to comply with Rule 2(b). Accordingly, we decline to disturb defendant's conviction.

### I.

After being charged with the violation of 14 C.F.R. § 159.2(b)(3), defendant, Austin Doe, initially appeared before Magistrate Quin S. Elson of the Eastern District of Virginia on February 24, 1982. Magistrate Elson, without taking any roll call, read a general statement to those in the courtroom at the beginning of the proceedings. In it, he stated certain of the information required to be given to defendants by Misd.R. 2(b) in cases involving minor and petty offenses. Those consenting to the magistrate's jurisdiction were requested to fill out a form to that effect. Doe completed and signed such a form. After affording an opportunity for those who wished to be tried before the district court to request transfer and receiving several guilty pleas, Magistrate Elson began to call individual cases. When Doe's case was reached, Magistrate Elson explained to him that he was charged with violating 14 C.F.R. § 159.2(b)(3) "in that you failed to obey the lawfully posted signs at National Airport." Doe entered a plea of "guilty with an explanation", but indicated that he did not understand the charge. The magistrate asked the arresting officer about the facts, after which the following colloquy ensued:

THE COURT: So it wouldn't make any difference if he was driving a cab or any kind of vehicle. His vehicle was allegedly in violation of the sign that said no parking; no standing.

OFFICER WILSON: Yes, sir.

THE COURT: Is that correct? All right. Do you understand that? That's the nature of the charge, Mr. Doe.

THE DEFENDANT: I don't quite (inaudible)—that. (inaudible)—again.

THE COURT: All right. Would you state it again?

OFFICER WILSON: The signs state no parking; loading and unloading only; and no waiting. There's a picture of a tow truck and a vehicle hooked on the rear of it on the—all around the outer lanes of the circle.

THE DEFENDANT: Your Honor, I don't feel that's—(inaudible)—proper charge, because I wasn't—(inaudible)—inside lane.

THE COURT: All right. Do you want to withdraw your plea, Mr. Doe?

THE DEFENDANT: I wasn't (inaudible)—in the inside lane; okay? That's not the right charge.

THE COURT: I don't want to hear that. Your plea is withdrawn. I'll enter a plea of not guilty for you. Have a seat.

Before Doe's case actually was called for trial, Magistrate Elson transferred it to Magistrate W. Harris Grimsley. Magistrate Grimsley made no further inquiry of Doe regarding his awareness of and waiver of his rights, but proceeded directly to try the case. The government's only witness

---

1. 14 C.F.R. § 159.2(b)(3) prohibits any person from operating a taxicab on Washington National Airport for the purpose of picking up or discharging a passenger for hire unless he complies with the requirement that:

He must obey all posted official airport signs and all lawful directions and signals of airport police.

was the arresting officer, who testified not only regarding Doe's allegedly having parked in a designated no parking zone, but also testified that Doe had backed into the cab lane without going through the gate into the lane and paying the required $.50 fee. Doe conducted cross-examination of the officer and testified at the same time. During the course of his statements, Doe made certain statements regarding his backing into the cab lane. He apparently made these in an effort to explain to Magistrate Grimsley that the arresting officer had erred when he charged him, Doe, with illegal parking, that the real offense was backing into the cab lane.

Magistrate Grimsley found Doe guilty, though whether of illegal parking or backing into the cab lane was not clear from his oral opinion. When Magistrate Grimsley filed a written opinion, it became clear that he had found Doe guilty both of backing into the cab lane *and* parking in a designated no parking zone. Magistrate Grimsley imposed a fine of $25.00 and sentenced Doe to ten days in jail, suspended in favor of one year of unsupervised probation.

Doe appealed to the district court. The district court affirmed, finding that there was sufficient evidence to support Magistrate Grimsley's findings as stated in his written opinion. This appeal then ensued.

## II.

Misd.R. 2(b) provides:

INITIAL APPEARANCE. At the defendant's initial appearance on a misdemeanor charge, the magistrate shall inform the defendant of the following:

(1) the charge against him, and the maximum possible penalty provided by law;

(2) his right to retain counsel;

(3) unless he is charged with a petty offense for which appointment of counsel is not required, his right to request the assignment of counsel if he is unable to obtain counsel;

(4) that he is not required to make a statement and that any statement made by him may be used against him;

(5) that he has a right to trial, judgment and sentencing before a judge of the district court;

(6) unless the offense charged is a petty offense, that he has a right to trial by jury before either a magistrate or a judge of the district court;

(7) if the prosecution is not on an indictment or information and is for a misdemeanor other than a petty offense, that he has a right to have a preliminary examination unless he consents to be tried before the magistrate; and

(8) if he is in custody, of the general circumstances under which he may secure pretrial release.

Defendant maintains that procedures followed by the magistrates in conducting his trial violated a number of the requirements of Rule 2(b).

### A.

■ First, Doe maintains that the factual basis of the charge on which he was convicted was not adequately explained to him prior to his pleading to the charge, in violation of Rule 2(b)(1). The record shows him to be correct. The only indication of the nature of the charge that defendant received at his initial appearance clearly specified that he had violated the regulation by parking where signs prohibited parking. At trial, however, the magistrate received evidence that defendant had both parked in a no parking zone and backed into a cab lane, and found defendant guilty of violating the regulation on the basis of both acts.

Despite Magistrate Elson's failure to clarify the charge adequately, we are persuaded that defendant was not prejudiced thereby. Magistrate Elson, upon hearing Doe's protest against the charge, entered a plea of not guilty, which was proper given defendant Doe's view of the case. When Doe's case was tried, the complaining officer offered evidence that Doe both had parked in a no parking zone and had backed into the cab lane. Magistrate

Grimsley found that defendant committed both acts. Since a finding that defendant had committed either act would have been adequate to convict him of the offense charged, defendant would have been found guilty had the cab lane incident never entered into the matter. Thus, it is clear that the insertion of the cab lane incident into the officer's testimony and the magistrate's findings was not a necessary element of defendant's conviction, and did not materially alter the outcome of the trial.

### B.

Defendant next contends that he was never clearly informed of the maximum possible penalty for the specific charge that he faced. Again, the record shows him to be correct. In his opening statement[2] Magistrate Elson dealt with penalties as follows:

> In all of those cases that come before the Magistrate this morning, you have the absolute right to trial, judgment, and sentencing before a judge of the United States District Court sitting without a jury in the event that the charge for which you come before the Magistrate carries with it a maximum possible sentence of six months in jail and a fine of $500, either or both.
>
> In the event that you are charged with what is known as a misdemeanor, now that is an offense that carries with it a maximum jail sentence of one year in prison. If you are charged with that offense, you have the absolute right to trial, judgment, and sentencing before a

judge of the United States District Court sitting with or without benefit of a jury. Though the magistrate mentioned the penalty applicable to petty offenses ("six months in jail and a fine of $500, either or both"), he did so only in the context of telling defendants that "in the event" that their charge carried such a penalty, they had the right to trial before the district court. His comments applicable to misdemeanors are of the same ilk. Even if Magistrate Elson had directly advised the assembled defendants what were the penalties applicable to minor and petty offenses, he never gave them any basis for determining with which type of offense each individually was charged. Magistrate Grimsley, in trying Doe's individual case, did nothing to correct the above ambiguities.

Despite the ambiguousness of Magistrate Elson's comments, we think that Doe was not prejudiced. The magistrate's statement did in fact mention maximum penalties applicable to petty and minor offenses and no others. It thus was adequate to alert the assembled defendants to the potential penalties applicable to cases to be tried that day. Since the purpose of advice regarding maximum penalties is to inform defendants of the possible penalties to which they are exposed in order to assist them in deciding whether to submit to proceedings before the magistrate, *see* Advisory Committees Notes to Misd.R. 2, and in deciding what plea they wish to enter, a statement alerting defendants to the potential penalties for the entire set of cases to be heard was adequate, even if the statement was not as clearly expressed as might have been desirable.[3]

---

**2.** Defendant notes that at the time that Magistrate Elson delivered this opening statement, no roll call of defendants whose cases were docketed that day had been taken. There thus was no assurance that any particular defendant heard this general explanation of his rights.

Defendant, however, makes no allegation that he personally was not present when the statement was made. Defendant thus is without standing to challenge the procedure.

We do not reach the question of whether such announcements by the court, with no procedure utilized to insure that those they concern actually are present, fall short of the requirements of Rule 2(b). We note, however, that in the Advis-

ory Committee's Notes to Rule 2, it is suggested that the enumerated advice "often .... can be given to a group of defendants collectively, *and when each case is called the magistrate inquires if that defendant heard the advice.*" (Emphasis added.)

**3.** We note that the magistrate invited questions from any defendant not fully understanding the charge against him and penalties applicable thereto. Especially in light of this opportunity to obtain further clarification if he so desired, it seems to us that defendant was not prejudiced by any ambiguity with regard to his specific charge in the magistrate's statement so long as

## C.

Defendant also contends that Magistrate Elson's comments did not advise him that anything he might say could be used against him. The record shows that Magistrate Elson's statement was adequate to advise the defendants that they could remain silent and put the government to its proof. There is nothing in the statement, however, that advised the defendants that anything they said could be used against them.

While we recognize that Magistrate Elson omitted information required to be given to defendants by Misd.R. 2(b)(4), we can find no indication, however, that defendant would have proceeded differently before the court had he had this information. Doe suggests that had he been adequately informed, he would not have made certain statements tending to inculpate himself in backing into the cab lane. Defendant's assertion is incompatible with his statements at trial with regard to the cab lane incident. His defense against the cab lane allegation was a confession and avoidance: that he backed into the cab lane, but did so only because he was directed to do it by the cab dispatcher. He thus would have stated that he backed into the cab lane whether or not he had been advised that anything he said could be used against him; the admission that he had backed into the cab lane was the core of his defense.

## D.

■ Next, Doe contends that Magistrate Elson's opening statement did not adequately advise the assembled defendants of their right to retain counsel. We disagree, and believe that the magistrate's statement on this point was adequate.

Further, you have the right, should it be your desire, to have your case heard here not to be put to trial within 30 days of your first appearance before the first federal judicial officer that you appear before. The reason for this is that time

he was apprised of the maximum penalty to which the most aggravated of the cases to be

is given to you to obtain counsel, to speak with counsel, to subpoena witnesses, to talk to witnesses, or do all those things necessary to protect your interest in this matter.

\*      \*      \*      \*      \*      \*

I wish to advise you that in almost all of the cases that come before the Magistrate today, there is a potential for a jail sentence. Therefore, if you have not had the opportunity to speak with counsel and it is your desire to do so before you proceed any further, certainly that opportunity will be given to you if this is your first appearance before the Magistrate.

It seems to us that this statement, though not stating the proposition in so many words, was adequate to advise defendants that they could retain private counsel and that the court would provide the time necessary for them to do so.

■ Doe carries his argument further, however, and makes two additional contentions. First, he maintains that defendants must be afforded more information than the above in order to satisfy the requirements of Misd.R. 2(b)(3). Particularly, he argues that, in order for a defendant's subsequent waiver of his right to counsel to be valid, the defendant must have been "afforded a reasonable time to make his decision and he must [have been] advised that it would be in his best interests to have a lawyer because of a lawyer's special skills and training in the law." *Townes v. United States,* 371 F.2d 930, 933 (4 Cir.1966), *cert. denied,* 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967), citing *United States v. Plattner,* 330 F.2d 271, 276 (2 Cir.1964). Second, Doe maintains that before a defendant can be taken validly to have waived his right to counsel, the magistrate must engage in the inquiries of the defendant mandated by the Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

heard might expose the accused.

We are not persuaded by Doe's arguments in this regard. We made it clear in *Townes, supra,* 371 F.2d at 934, that the primary inquiry in these sorts of cases is not whether any particular ritual has been followed in advising the defendant of his rights and accepting his waiver, but simply whether the procedures followed were adequate to establish "an intentional relinquishment of the right to counsel, known and understood by the accused...." *Townes, supra,* 371 F.2d at 934. Where the charge involves a petty offense of the sort for which minimal punishment is likely to be imposed, to advise a defendant that it invariably is in his best interest to have counsel, as defendant argues he should have been advised, would in fact be misleading. It follows that the extensive colloquy recommended in *Faretta* and *Townes* to determine whether an accused has voluntarily and knowingly relinquished his right to counsel would make little sense in a case such as the present one. To put such emphasis on the defendant's decision to represent himself and to warn him of the dire dangers likely to follow therefrom would be contrary to the common sense result that most defendants in such cases will and should choose to represent themselves.

In petty cases of the nature of the present one, all that is required is that the defendant be made aware that he can have an attorney if he wants to retain one and that the court will make necessary arrangements to allow defendant to take such a step. The court's instructions in the present case were adequate to accomplish that purpose.

▮ Defendant also contends that the magistrates erred in failing to inform him that if he could not afford an attorney one would be appointed for him. Misd.R. 2(b)(3) requires that the magistrate advise a defendant that counsel can be appointed only when the defendant is charged with an offense for which appointment of counsel is

required. Under present law, only offenses where a sentence of imprisonment is imposed give the defendant a right to appointed counsel. *Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 1161, 59 L.Ed.2d 383 (1979). In an earlier case we declined to decide whether imposition of a suspended jail sentence gives rise to a right to appointed counsel. *United States v. Sultani,* 704 F.2d 132 (4 Cir.1983). However, in the present case, the issue is moot. Doe was sentenced on February 24, 1982, at which time he was placed on one year's unsupervised probation. The period of time during which Doe's violation of probation could have resulted in incarceration thus expired on February 24, 1983. It is clear that, because he was never incarcerated pursuant to the charge in the present case and is not now subject to any possibility of imprisonment on the charge, defendant presently suffers no prejudice from the magistrate's error, if any.

E.

▮ Finally, defendant contends that he was not adequately advised that he had the right to demand trial before the district court. Regarding their right to seek trial in the district court, Magistrate Elson told the assembled defendants:

> You have the absolute right to trial, judgment and sentencing before a judge of the United States District Court sitting without a jury in the event that the charge for which you come before the magistrate carries with it a maximum possible sentence of six months in jail and a fine of $500, either or both.

Though Magistrate Elson's statement here contains the same ambiguity which we have identified with regard to advice to defendants on maximum penalties, we think that the statement was adequate to inform defendants of their rights. This is particularly true when the waiver form that all defendants consenting to trial before the magistrate signed is considered.[4]

---

**4.** We do not mean to imply that a written consent standing alone could cure an actual omission by the magistrate to explain a right as

required by Misd.R. 2(b). *See United States v. Miller,* 468 F.2d 1041, 1044 (4 Cir.1972). Rather, we suggest merely that the form of a defend-

The waiver form contained the clear implication that each person signing it had the right to proceed before the district court and that in signing the form he relinquished that right.[5]

### III.

In *United States v. Kabat,* 586 F.2d 325, 328 (4 Cir.1978), we declined to establish a rule that failure of the magistrate strictly to comply with Rule 2(b) requires automatic reversal. We note that in the present case, the magistrate's actions again fell short of strict compliance, and we again reiterate our readiness to establish a *per se* rule if it appears that it is necessary to assure compliance with Rule 2(b). We do not, however, think that this case mandates the establishment of such a rule. The magistrate's errors were ones of insufficient preciseness in meeting the requirements of Rule 2(b) rather than wholesale omissions, and no prejudice accrued to defendant from the errors that we have examined. We thus leave to another day consideration of whether events have shown a need for a rule requiring *per se* reversal for failure to comply strictly with Rule 2(b).

AFFIRMED.

---

ant's waiver of a right, when the explanation of the right by the court is fraught with some ambiguity, may be consulted to determine whether the defendant was adequately advised of the right to be aware that he had it and, by signing the form, waived it.

5. The waiver form recited the following:

The Magistrate has informed me .... of my right to trial, judgment, and sentencing before a United States District Judge.

\* \* \* \* \* \*

I waive my right to trial, judgment, and sentencing before a United States District Judge.

\* \* \* \* \* \*

Here, the waiver form specifically stated that defendant possessed the right to be tried before a United States district judge and waived the right. *Cf. Miller, supra* n. 3 (form which defendant signed waiving right to be tried before jury referred in unequivocal terms only to her right to be tried before United States district judge and referred to her right to be tried by jury only as a contingency).