COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Malveaux and Causey
Argued at Norfolk, Virginia


MICHAEL ALAN WEBB

v.     Record No. 1972-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY BENNETT MALVEAUX
JUNE 18, 2024

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Charles E. Haden for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellee.


A jury convicted Michael Alan Webb ("appellant") of first-degree murder in violation of

Code § 18.2-32, after he waived his right to counsel and represented himself at trial. On appeal,

appellant asserts that the trial court erred when it found that appellant was competent to represent

himself at trial. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Appellant was indicted on a charge of first-degree murder of his mother, pled not guilty, and demanded a jury trial. At appellant's arraignment in the juvenile and domestic relations district court ("JDR court") on May 18, 2017, Terry Osborne was appointed to represent appellant upon appellant's oral request. Upon Osborne's motion, the JDR court ordered that appellant be evaluated for competency to stand trial. On July 19, 2017, Dr. Kevin McWilliams reported that, "due to his mental health deficits," appellant did not "currently appear competent to stand trial."

Appellant was admitted to Central State Hospital for restoration services in August 2017. During appellant's three-month period at Central State, his clinical psychologist and evaluator, Maria Sverdlova, noted that he did not display "any symptoms of a psychotic disorder . . . or affective instability," was not prescribed any psychotropic medication due to the "lack of observable symptoms," and was not "diagnosed with any mental illness aside from Unspecified Personality Disorder." Sverdlova observed that appellant was likely to be "challenging" to work with, but this was due to "features of his personality" rather than "any serious mental illness." She also noted that he had "a relatively strong knowledge of court-related information." On November 21, 2017, Sverdlova reported that appellant was "competent to stand trial."

At a hearing on January 24, 2018, the circuit court was made aware that appellant had requested to represent himself as he felt deprived of his Sixth Amendment right to "act as his own counsel or co-counsel." Osborne told the court that she had explained to appellant the pros and cons of self-representation and that appellant seemed "determined to want to do it."

When the court asked appellant if he desired to represent himself, he answered, "I wish to represent myself with standby counsel as help." The court asked appellant if he thought he was

"competent to represent [him]self." He responded "Yes, sir." The court then told appellant, "I want to make sure you understand the consequences of representing yourself." It inquired to his background:

| THE COURT: | How old [are] you? |
|---|---|
| [APPELLANT]: | I'm 35. |
| THE COURT: | What's the last grade in school that you completed? |
| [APPELLANT]: | Tenth. |
| THE COURT: | Can you read and write? |
| [APPELLANT]: | Yes, sir. |
| THE COURT: | All right. Did you get a GED? |
| [APPELLANT]: | Yes, sir. |
| THE COURT: | Do you have any other kind of training or experience . . . ? |
| [APPELLANT]: | No, sir. |
| THE COURT: | All right. And . . . what kinds of jobs have you had? |
| [APPELLANT]: | Landscaping . . . Salvation Army, fast food. |

The court then asked appellant if he had "any experience at all with the criminal justice system." Appellant explained that previously, while incarcerated for robbery, he had filed in federal court "a case of cruel and unusual punishment . . . when [he] was subject to physical abuse by a corrections officer." Appellant told the court that he filed the lawsuit himself, did not have a lawyer advising him, and "was successful" and received "nominal damages." Appellant also explained his previous felony and misdemeanor convictions, the location and manner of trial for those offenses, and that he "had representation" in those cases.

The court then asked about appellant's understanding of "the law and what the rules are that govern a trial on the charge here." Appellant explained that he had read about the "statutory limitations" and "sentencing guidelines" relating to the charge and that he understood what hearsay was; he also accused the Commonwealth of "mishandling . . . evidence." The court cautioned appellant about the seriousness of the charge and the potential sentence, and further warned:

> there may be technical issues that require legal training to understand which would affect your case. There may be defenses that you have to the charge that a lawyer would know how to raise. If you don't raise the defense, you'll not be able to bring them up for the first time on appeal. What that means there may be certain things you could do during the course of a trial that a lawyer would know when to do that and how to do that. If you represent yourself and you don't do that . . . it's not going to be heard on appeal. Do you understand that?

Appellant replied that he understood.

The court expressed concern that appellant may not understand the limited role of standby counsel and explained that standby counsel "wouldn't be actively sitting there acting like a lawyer would, objecting at the moment the objection needs to be made," and that "only one person" could examine witnesses and make opening and closing statements. The court advised appellant that if he was representing himself and became confused or frustrated, "that's not a basis for stopping the trial." Appellant responded that he was aware and stated twice: "I will continue to represent myself."

The circuit court then discussed form DC-335, "Waiver of Right to Representation by a Lawyer." The court asked appellant to read parts of the form aloud, then it read other parts aloud to appellant, and asked him if he understood the form and its significance. Appellant replied that

he understood, but then stated: "I don't waive the right to my lawyer. I do wish to represent myself."[1] The circuit court told appellant that he couldn't "have [his] cake and eat it too."

After consulting with Osborne, appellant announced that he felt he needed to sign the waiver form "under duress." The court ultimately told appellant: "I'm not convinced at this point . . . that you're knowingly and intelligently . . . waiving your right to an attorney . . . because I don't think waiving your right to a lawyer is what you think it means." Accordingly, the court denied appellant's request to represent himself.

On February 12, 2018, Osborne moved to withdraw because appellant "consistently expressed the desire to represent himself," was "not receptive to the suggestion or direction of counsel," and was either unwilling or unable to assist in the preparation of his defense.

At a hearing on February 21, 2018, appellant again asserted that he wished to represent himself. The circuit court warned that if it relieved Osborne, appellant would be representing himself and "standby counsel would only be there to basically jump in if they need to but otherwise would not be participating in the trial." Appellant confirmed that he understood, asserted again that he wished to represent himself, and signed the waiver form. The court stated: "I'm now convinced that [appellant has] knowingly, intelligently, and voluntarily waived his right to an attorney. I find that to be a knowing and intelligent decision." The court accepted appellant's waiver, granted Osborne's motion to withdraw, and appointed Christopher Voltin as standby counsel.

---

[1] The dissent cites this statement as demonstrating ambiguity as to whether appellant truly wanted to represent himself. However, the circuit court explicitly did not accept appellant's waiver on the date that he made this statement, finding that his waiver would not be knowing and intelligent at that point in time. The court only accepted appellant's waiver about a month later, after educating appellant about what a waiver entails and giving him time to consult Osborne and demonstrate that he understood he could not represent himself without having first waived his right to a lawyer.

Also at the February 21 hearing, the court commented on appellant's performance and noted that it was "impressed with certain things," including appellant's ability to locate caselaw. Still the court reminded appellant of the seriousness of the charge and told him that an attorney "has much more experience" and "can help [appellant] substantially." Appellant asserted that he was "more than competent to represent [him]self."

At a hearing on March 5, 2018, the court reminded appellant that Voltin "may become [his] attorney" if he chose, and insisted that such "would be the [c]ourt's advice." Appellant did not take the court's advice at that time. But the court entered an order after a hearing on March 8, 2018, reflecting "the request of [appellant] for court-appointed counsel" and appointing Voltin to represent appellant.[2]

On May 25, 2018, the court granted Voltin's motion to withdraw due to a conflict and appointed George Brooks to represent appellant. On July 18, 2018, the circuit court granted Brooks's motion to withdraw due to "the parties' failure to agree on how to proceed." At a hearing on July 30, 2018, appellant asserted that he "did not ask for an attorney to represent [him]," that he "d[id]n't want a lawyer," and that he "wanted stand-by counsel." The court asked twice, "Do you wish to represent yourself," and appellant answered, "I already said that in February." He also confirmed that he "wanted stand-by counsel." The court stated that it was going to "accept [appellant's] waiver as it did in the past" and appointed Brandon Waltrip "to represent [appellant] as stand-by counsel."

On August 8, 2018, appellant acknowledged that he had "a standby counsel, Mr. Waltrip" and stated, "I feel like it was safer for me to represent myself until I feel otherwise." The circuit court reminded appellant that it could appoint him an attorney, but if appellant still wished to represent himself, "out of abundance of caution, the [c]ourt may have [appellant] sign a form

---

[2] The record does not contain a transcript of the hearing held on March 8, 2018.

similar to the one [he] signed before." Appellant refused, stating, "I've already signed this form and I'm not going to resign [sic] it again . . . ." Appellant denied requesting counsel on March 8, 2018. He asserted that the court "should . . . validate the fact that I signed into [sic] a waiver," that he "never requested counsel," and that he "did sign competently . . . the waiver." He asked that it be "notarized that [he] was competent and that [he] did sign" the waiver form.

On August 16, 2018, the first day of trial, appellant confirmed he had chosen to represent himself. The next day, following the jury's guilty verdict but prior to sentencing, appellant asked that Waltrip "step in and advise the courtroom as far as any kind of steps that need to be taken." The court allowed Waltrip to act as appellant's lawyer for the sentencing hearing.

Waltrip first moved for a mistrial based on appellant's purported lack of competence to stand trial. The court denied the motion, stating that it had considered McWilliams's and Sverdlova's reports and that Sverdlova "opined, and the [c]ourt agreed, that he was competent to stand trial." Waltrip then moved for a mistrial based on appellant's purported lack of competence to represent himself. He argued that, under *Indiana v. Edwards*, 554 U.S. 164 (2008), even if an individual meets the standard for competency to stand trial, state courts can still determine that he is not competent to represent himself. Waltrip noted that appellant failed to object to a supposed *Batson v. Kentucky*, 476 U.S. 79 (1986), violation, gave testimony and editorial statements during cross-examination, waived a prior objection to admission of his own statements, failed to file certain pretrial motions, and was "wholly unprepared" to meet the Commonwealth's evidence. Additionally, Waltrip argued that appellant misstated witness names and the time of day, the court had to "regularly instruct" him as to "certain rules and procedures," and the jury was "frustrated and misunderstood why he was representing himself."

The circuit court denied this motion based on its "lengthy discussions" with appellant about the dangers of self-representation. It also highlighted that appellant seemed to be aware of

relevant issues, cited appropriate caselaw, and asked appropriate questions. Regarding the purported *Batson* violation, the court noted that there was "nothing on the record about race or any of those things," but that there "certainly appeared to be a race-neutral reason" that led the Commonwealth to strike a juror. Appellant's other purported errors and unfamiliarity with court rules and procedures were some of "the dangers and things [appellant] was warned about."

Appellant subsequently moved for a new trial, which the court denied. Appellant appealed that decision to this Court; his petition for appeal was initially denied. *Webb v. Commonwealth*, No. 0789-19-1 (Va. Ct. App. Nov. 27, 2019 and Jan. 27, 2020) (orders). Appellant's appeal of that decision to our Supreme Court was also denied. *Webb v. Commonwealth*, No. 200282 (Va. July 28, 2021) (order). Appellant's petition for a delayed appeal in this Court pursuant to Code § 19.2-321.1(A) was also initially denied. His motion to reconsider was granted. In granting appellant leave to file a delayed appeal, we limited the appeal to "the self-representation issue."[3]

---

[3] In the order granting the delayed appeal, we stated the issue as appellant's assignment of error in his first appeal: "[a]ppellant contends that the trial court erred 'when it found that [he] held the mental competency to represent himself at trial in violation of his Sixth Amendment right to a fair trial.'" *Webb v. Commonwealth*, No. 1972-22-1, slip op. at 1 n.1 (Va. Ct. App. Sept. 27, 2022) (order) (second alteration in original) (quoting *Webb v. Commonwealth*, No. 0789-19-1, slip op. at 4 (Va. Ct. App. Nov. 27, 2019) (order)). Yet in his opening brief, appellant's assignment of error and many of his ensuing arguments are much broader.

Where an appeal has been awarded based on a petition for appeal, "[i]t is impermissible for an appellant to change the wording of an assignment of error, 'especially when the assignment is set forth in the order of th[e appellate] Court awarding the appeal.'" *White v. Commonwealth*, 267 Va. 96, 103 (2004) (quoting *Hamilton Dev. Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 44 (1994)); *accord Commonwealth v. Herring*, 288 Va. 59, 71 (2014). Where such modification has occurred, the appellate court will limit its consideration "to the narrow issue raised in [appellant]'s initial assignment of error, disregarding any argument on and expressing no opinion with respect to the additional issue interjected by the improper modification of that assignment of error in the opening brief." *White*, 267 Va. at 103. We therefore decline to consider the merits of the additional issues that appellant raises on brief beyond that of whether he was competent to represent himself. *See* Rule 5A:20(c)(1); *see also Canales v. Commonwealth*, 78 Va. App. 353, 363 (2023) (declining to consider an argument "not encompassed within the assignment of error"); *White*, 267 Va. at 103.

ANALYSIS

"The Sixth Amendment guarantees a criminal defendant 'the Assistance of Counsel for his defence.'" *Edwards v. Commonwealth*, 49 Va. App. 727, 734 (2007) (quoting U.S. Const. amend. VI). "This textual right, it has been held, 'implies' the concomitant right to be unassisted by counsel." *Id.* at 734 (quoting *Faretta v. California*, 422 U.S. 806, 821 (1975)). "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution," *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995), one of which is the Sixth Amendment right to assistance of counsel, *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). "While we review the ultimate Sixth Amendment [self-representation] question *de novo*, the 'trial court's factual findings are reviewed for clear error.'" *Edwards*, 49 Va. App. at 741 (quoting *Thomas v. Commonwealth*, 260 Va. 553, 560 (2000)).

"The unique right to appear *pro se*, known as the *Faretta* right, applies only when a defendant 'truly wants to do so.'" *Id.* at 735 (quoting *Faretta*, 422 U.S. at 817). "Because an exercise of the right of self-representation necessarily entails a waiver of the right to counsel . . . the exercise of the right of self-representation must be evaluated by using many of the same criteria that are applied to determine whether a defendant has waived the right to counsel." *Thomas*, 260 Va. at 558 (quoting *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000)). *Faretta* and its progeny have enumerated these criteria, which help us determine whether appellant truly wanted to represent himself, and whether he properly exercised his right of self-representation, thus informing the question whether he was competent to do so.

"To be successful, a *Faretta* request" to represent oneself "must be (i) timely, (ii) clear and unequivocal, and (iii) 'voluntarily, knowingly, and intelligently made.'" *Edwards*, 49 Va. App. at 735 (quoting *Thomas*, 260 Va. at 558). Such a request "meets the timeliness requirement if made before 'meaningful trial proceedings' have commenced." *Id.* at 737 (quoting *Muhammad v.*

- 9 -

*Commonwealth*, 269 Va. 451, 502 (2005)).  "[T]he 'clear and unequivocal' requirement not only

protects a defendant from inadvertent waivers stemming from 'occasional musings' about self-

representation, it 'also prevents a defendant from taking advantage of and manipulating the mutual

exclusivity of the rights to counsel and self-representation.'"  *Id.* at 739 (quoting *Frazier-El*, 204

F.3d at 558-59).

"The voluntarily-knowingly-intelligently requirement addresses related concerns over the

defendant's ability to understand the choice he is making."  *Id.*  "Before deciding to proceed *pro se*,

a defendant 'should be made aware of the dangers and disadvantages of self-representation, so that

the record will establish that he knows what he is doing.'"  *Id.* (quoting *Iowa v. Tovar*, 541 U.S. 77,

89 (2004)).  Determining whether a *Faretta* request was knowing, voluntary, and intelligent requires

a fact-intensive inquiry into the accused's "background, experience, and conduct."[4]  *E.g.*, *Edwards*

*v. Commonwealth*, 21 Va. App. 116, 124 (1995); *Kinard v. Commonwealth*, 16 Va. App. 524, 527

(1993); *Church v. Commonwealth*, 230 Va. 208, 215 (1985).

There are several other factors that guide the determination of whether a waiver was

knowing, voluntary, and intelligent, none of which alone are dispositive.  For instance, "while it is

preferable practice for trial courts to warn an accused of the risks of self-representation, . . . a

cautionary instruction is only one of the 'facts and circumstances' relevant to a determination of the

validity of a waiver of counsel."  *Edwards*, 21 Va. App. at 125 (quoting *Superintendent v. Barnes*,

---

[4] The dissent asserts that appellant's waiver of his right to counsel was not voluntarily, knowingly, and intelligently made because at the July 2018 hearing, the circuit court did not conduct an inquiry into appellant's background, experience, and conduct.  But prior caselaw does not indicate that this inquiry must be conducted more than once.  Indeed, "[t]he primary inquiry . . . is not whether any particular ritual has been followed in advising the defendant of his rights and accepting his waiver, but simply whether the procedures followed were adequate to establish an intentional relinquishment of the right to counsel, known and understood by the accused . . . ."  *Kinard v. Commonwealth*, 16 Va. App. 524, 527 (1993) (second and third alterations in original) (quoting *United States v. Doe*, 743 F.2d 1033, 1038 (4th Cir. 1984)).  Here, the court had already conducted an extensive inquiry into these characteristics at a prior January 2018 hearing.

221 Va. 780, 784 (1981)). And "the absence of a written waiver is not determinative of the question." *Watkins v. Commonwealth*, 26 Va. App. 335, 344 (1998); *see also* Code § 19.2-160 (requiring that, should a defendant refuse or fail to sign a statement documenting either his waiver of the right to counsel or request for appointment of counsel, such refusal "shall be deemed to be a waiver of the right to counsel, and the court . . . shall, if such refusal is not rescinded and the accused's signature given, proceed to hear and decide the case"). Finally, "[t]he waiver of the right to counsel need not be express; it may be inferred from a defendant's conduct." *Walker v. Commonwealth*, 71 Va. App. 665, 673 (2020). Rather than focusing on any single factor, the conclusion that a waiver was knowing, voluntary, and intelligent must be supported by "our review of the record as a whole." *Watkins*, 26 Va. App. at 344-45. In short, where "[t]he record affirmatively shows that [a defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will," a state court will have "deprived him of his constitutional right to conduct his own defense" in forcing him to accept appointed counsel against his will. *Faretta*, 422 U.S. at 835-36.

Appellant argues that while "*Faretta* gives a framework for self-representation," a subsequent Supreme Court decision, *Indiana v. Edwards*, 554 U.S. 164 (2008), "focused on the necessity that a defendant not only be deemed competent to stand trial, but also competent to represent oneself." The holding of that case is not so broad. Rather, the issue in that case was whether a state court "may *deny* a gray-area defendant[5] the right to represent himself." *Edwards*, 554 U.S. at 173. *Indiana v. Edwards* guides our consideration of whether appellant suffered such "severe mental illness" that the Constitution "permits"—though does not require—the trial court to

---

[5] "Gray-area defendant" refers to a defendant with "a mental condition that falls in a gray area between [the] minimum constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose." *Edwards*, 554 U.S. at 172.

- 11 -

insist that he be represented by counsel. *Id.* at 178. The permissive word "may" makes a trial court's decision on an issue "discretionary" and thus subject to an abuse of discretion standard of review on appeal. *See Perel v. Brannan*, 267 Va. 691, 704 (2004). And a trial court's decision to grant or deny a *Faretta* request requires "an exercise of factfinding discretion." *Edwards*, 49 Va. App. at 738. Accordingly, we review the circuit court's decision here for abuse of discretion.

"[A] [circuit] court by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (second and third alterations in original) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

While the Court in *Faretta* observed that the defendant had only a "high school education," 422 U.S. at 807, it did not consider his mental capacity in any other respect. More recently, in *Indiana v. Edwards*, the United States Supreme Court made it clear that a defendant's mental capacity is another relevant factor in determining whether a court may require appointed counsel. 554 U.S. at 171 (noting that "[t]he question here concerns a mental-illness-related limitation on the scope of the self-representation right"). Because that case involved a "gray-area defendant," the Court held that, to be competent to represent himself, the defendant needed to meet a "somewhat higher standard" than the "minimal constitutional requirement that measures a defendant's ability to stand trial." *Id.* at 172.

Under this higher standard, "the Constitution *permits* judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Id.* at 177-78 (emphasis added). "That is to say, the Constitution *permits* States to insist upon representation by counsel for those competent

enough to stand trial under *Dusky*[6] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178 (emphasis added); *accord United States v. Ziegler*, 1 F.4th 219, 227 (4th Cir. 2021) ("[W]hile a court *may* impose a 'higher standard' on a defendant before permitting him to waive counsel and proceed pro se, nothing requires a court to do so." (quoting *United States v. Bernard*, 708 F.3d 583, 585 (4th Cir. 2013))). In applying this higher standard that accounts for a defendant's mental capacity, the trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177. This additional level of inquiry ensures that the proceedings "not only [are] fair," but "appear fair to all who observe them." *Id.* (quoting *Wheat v. United States*, 486 U.S. 153, 150 (1988)).

We assume without deciding that appellant's mental capacity was so compromised that he was a "gray-area defendant" as contemplated by *Indiana v. Edwards*.[7] Even so, we conclude that the circuit court did not abuse its discretion in granting appellant's request to represent himself. We reach this conclusion by first considering the three elements of a valid *Faretta* request, along with all the relevant factors articulated prior to *Indiana v. Edwards*. We then apply the "somewhat

---

[6] *Dusky v. United States*, 362 U.S. 402, 402 (1960), articulated the minimum standard for evaluating a defendant's competence to stand trial: "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." This test touches some of the facts and circumstances that inform the question of whether a defendant is competent to waive his right to counsel. But *Indiana v. Edwards* recognized that, "given the different capacities needed to proceed to trial without counsel, there is little reason to believe that *Dusky* alone is sufficient" to determine whether a defendant is mentally competent to represent himself. 554 U.S. at 177. As such, the Court cautioned "against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself." *Id.* at 175. Here, the former issue is not within the scope of our review; we consider only the latter.

[7] Appellant has not argued, at trial or on appeal, that his mental capacity rendered him a "gray-area defendant."

higher standard" for determining appellant's competence to represent himself by considering whether the court's allowing him to represent himself rendered his trial unfair. *See Edwards*, 554 U.S. at 172, 175-77.

A. The validity of appellant's *Faretta* request

As to the first *Faretta* element, timeliness, there is no dispute that appellant's *Faretta* request was timely. Osborne initially communicated that request to the circuit court at appellant's arraignment on January 24, 2018. The circuit court accepted appellant's written waiver form on February 21, 2018, and accepted his oral waiver again on July 30, 2018, well before meaningful trial proceedings commenced on August 16, 2018. *See Edwards*, 49 Va. App. at 737 (noting that "an assertion of the right of self-representation, even as late as the morning of trial, is timely as a matter of law if it precedes the seating of the jury" (quoting *Thomas*, 260 Va. at 559)).

As to the second element, we conclude that appellant's request to represent himself was clear and unequivocal. It was not an "occasional musing" but a consistent position, expressed at multiple hearings between his initial request in January 2018 and trial in August 2018. Even if he deviated from this position on March 8, when after a hearing on that date the circuit court entered an order reflecting "the request of [appellant] for court-appointed counsel," which he later vehemently denied doing, that issue was subsequently resolved on July 30, when the circuit court accepted his waiver "as it did in the past" and appointed Waltrip as "stand-by counsel." Though we recognize that a defendant may "forfeit[] his right to self-representation by his vacillating positions," *Edwards*, 49 Va. App. at 739 (quoting *Stockton v. Commonwealth*, 241 Va. 192, 203 (1991)), appellant's March 8 request was not such a complete departure from his former position that he can be said to have "vacillated" beyond the reach of his right to represent himself. *See Walker*, 71 Va. App. at 674-75 (finding that, "despite appellant vacillating between representing himself or wanting counsel," an appellant "knowingly waived [his Sixth Amendment right to counsel] by his voluntary,

intentional actions" where his conflicts with multiple rounds of appointed and standby counsel

"represented an abuse, not an assertion," of that right). Rather, it was consistent with his desire to

represent himself with the aid of a non-participatory attorney, that is, with standby counsel. On July

30, appellant denied requesting counsel on March 8, asserted that he did not want counsel, and

confirmed that he wanted standby counsel. On that same date, he asked that it be "validate[d]" and

"notarized" that he signed the waiver form in February. Appellant still considered the first form to

be valid and saw no need to revisit his decision. Appellant desired the same thing in July as he did

in February—to waive his right to counsel and represent himself with standby counsel.[8]

Finally, regarding the third element, a review of the record as a whole demonstrates that

appellant's *Faretta* request was voluntary, knowing, and intelligent.[9] Appellant demonstrated that

he understood the significance of his decision when he initially refused to sign the waiver form in

---

[8] While it is true that "with respect to fundamental constitutional rights, 'courts indulge every reasonable presumption against waiver,'" *Allen v. Commonwealth*, 252 Va. 105, 111 (1996) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)), no reasonable basis for such a presumption exists here. Viewed in the light most favorable to the Commonwealth, the record demonstrates that appellant waived his right to counsel a second time, on July 30. On that date, appellant denied requesting counsel on March 8 and reaffirmed that he wanted to represent himself. Accordingly, the circuit court accepted appellant's oral waiver "as it did in the past" and appointed Waltrip as "stand-by counsel." A second written waiver was not required, as the July 30 waiver is clear on the record. On August 16, the first day of trial, appellant confirmed that he had chosen to represent himself. Even if a presumption of waiver arose on March 8, it would be conclusively rebutted by the abundant evidence that appellant waived his right to counsel on July 30, and did not reinvoke it thereafter.

[9] Though appellant, and the dissent, both assert that appellant did not knowingly and intelligently waive his right to counsel, that issue is only before us to the extent that it informed the circuit court's exercise of discretion in allowing appellant to represent himself. The circuit court properly made a finding on the record that appellant's waiver was knowing, voluntary, and intelligent on February 21; it reincorporated that finding on July 30 by accepting appellant's waiver "as it did in the past." *See Thomas*, 260 Va. at 560 (noting that it is the trial judge's duty to determine, on the record, whether a waiver of the right to counsel "is voluntarily and intelligently made" (quoting *Church*, 230 Va. at 215)). Appellant did not challenge that finding at trial, and his assignment of error as granted in our order does not encompass that issue. Accordingly, we will not consider whether that finding was, in and of itself, erroneous. Rule 5A:18; Rule 5A:20(c)(1); *Canales*, 78 Va. App. at 363; *White*, 267 Va. at 103.

January, at which point he seemed to misunderstand the difference between appointed and standby counsel. He eventually signed the form after having almost a whole month to discuss the form with Osborne, educate himself about what it meant, and contemplate whether he truly wished to represent himself. The circuit court explained to appellant the difference between appointed and standby counsel, noting that they are mutually exclusive when it told appellant he could not "have his cake and eat it too." Thereafter, appellant articulated the difference on at least two occasions. On July 30, he asserted that he "did not ask for an attorney to represent" him, but he "wanted stand-by counsel." On August 8, he acknowledged that he had "a standby counsel, Mr. Waltrip" but felt "safer" representing himself until he felt otherwise. Appellant understood that, in waiving his right to counsel, he would only be entitled to the limited assistance of standby counsel.

The circuit court properly inquired into appellant's "background, experience, and conduct" to determine whether he was intelligently waiving his right to counsel. *Edwards*, 21 Va. App. at 124. It asked about his education level, work experience, prior experience with criminal and civil trials, and his understanding of jury trial proceedings and legal terminology. It was aware that he had only a tenth-grade education and that he had not represented himself before. But it also considered Sverdlova's report, which highlighted appellant's "relatively strong knowledge of court-related information." It accounted for appellant's prior experience being tried for a felony offense. The court noted appellant's performance, even saying it was "impressed" at one point prior to appellant's trial. More often, however, the court warned appellant of the risks of continued self-representation. Each cautionary instruction heightened appellant's awareness of the disadvantage he faced. Yet appellant consistently reaffirmed that he preferred to represent himself. The court properly allowed this only when it was satisfied that appellant understood what he was doing.

Accordingly, upon review of the facts and circumstances shown, we hold that the record supports the circuit court's finding that appellant (1) timely, (2) clearly and unequivocally, and

(3) voluntarily, knowingly, and intelligently waived his right to counsel and that the requirements of the Sixth Amendment have been met.

## B. Appellant's mental capacity

Having concluded that appellant made a proper *Faretta* request, we evaluate whether appellant suffered from "severe mental illness" to the point where he was not competent to conduct trial proceedings by himself. *Edwards*, 554 U.S. at 178. The circuit court was familiar with both Sverdlova's and McWilliams's reports and their differing profiles of appellant's mental condition. In her more recent report, Sverdlova noted that appellant lacked observable symptoms, had not been prescribed psychotropic medications, and had not been diagnosed with any mental illness aside from Unspecified Personality Disorder. Sverdlova's report does not indicate that appellant suffered from any reduced mental capacity. The circuit court viewed both reports along with its own observations of appellant's conduct and his responses to questions about his background, education, and experience with the judicial system. It properly considered all the factors pertinent to determining the validity of a *Faretta* request and properly accounted for appellant's mental status as *Indiana v. Edwards* indicates is appropriate here.

Yet, even if appellant suffered from a "severe mental illness," the Constitution only "permits"—but does not require—that the circuit court insist upon representation by counsel. *Id.* Virginia courts have not articulated a stricter requirement, and we decline to do so now. We decide only that *Indiana v. Edwards* gave the court discretion to require that appellant be represented if it determined, given the relevant facts and circumstances, that he was a "gray-area defendant." The circuit court was in the best position to make such a determination, and it did not abuse that discretion in honoring appellant's repeated requests to represent himself.

The fact that appellant's self-representation was not that of an experienced defense attorney does not mean the circuit court necessarily abused its discretion, or that appellant's trial was unfair.

Appellant's failure to preserve objections or file motions is not a basis for reversal merely because he was acting *pro se*. "Even *pro se* litigants must comply with the rules of court." *Francis v. Francis*, 30 Va. App. 584, 591 (1999). There is also no evidence that the purported errors were actual mistakes and not part of appellant's strategy for his defense. In fact, the record demonstrates that appellant disagreed with multiple experienced attorneys on how to proceed with his case. Ultimately, appellant was not "a man who is insane, unaided by counsel . . . who by reason of his mental condition stands helpless and alone before the court." *Edwards*, 554 U.S. at 177 (quoting *Massey v. Moore*, 348 U.S. 105, 108 (1954)). Rather, appellant exercised his constitutional right to represent himself in full knowledge of the potential consequences, after hearing repeated warnings, and after consistently turning down offers of appointed counsel.

## CONCLUSION

The circuit court did not abuse its discretion in honoring appellant's request to represent himself. Accordingly, the judgment of the circuit court is affirmed.

*Affirmed.*

Causey, J., dissenting.

I dissent from the affirmance of Webb's conviction because his waiver of the right to counsel was not clear and unequivocal. Webb constantly vacillated between exercising his right to self-representation and exercising his right to counsel, creating ambiguity about whether Webb truly wished to proceed *pro se*. Because in "ambiguous situations created by a defendant's vacillation or manipulation, *we must ascribe a 'constitutional primacy' to the right to counsel*," *Edwards v. Commonwealth*, 49 Va. App. 727, 739 (2007) (emphasis added), and because we must "'indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), the circuit court should not have found that Webb waived his right to counsel. Webb's waiver of his right to counsel was also not voluntarily, knowingly, and intelligently made because at the July 2018 hearing, the circuit court did not go through the necessary "fact-intensive inquiry into [Webb]'s 'background, experience, and conduct'" *E.g.*, *Edwards v. Commonwealth*, 21 Va. App. 116, 124 (1995); *Kinard v. Commonwealth*, 16 Va. App. 524, 527 (1993); *Church v. Commonwealth*, 230 Va. 208, 215 (1985). Thus, Webb's conviction should be reversed, and the case remanded for a new trial, if the Commonwealth elects to do so.

"The Sixth Amendment guarantees a criminal defendant 'the Assistance of Counsel for his defence.'" *Edwards*, 49 Va. App. at 734 (quoting U.S. Const. amend. VI). "This textual right . . . 'implies' the . . . right to be unassisted by counsel." *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 821 (1975)). "The unique right to appear *pro se*, known as the *Faretta* right, applies only when a defendant 'truly wants to do so.'" *Id.* at 735 (quoting *Faretta*, 422 U.S. at 817). "Because a *pro se* defense 'usually increases the likelihood of a trial outcome unfavorable to the defendant,' courts scrutinize the *bona fides* of the defendant's request as well as his manner of making it." *Id.* (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984)).

As the majority states, "[t]o be successful, a *Faretta* request must be (i) timely, (ii) clear and unequivocal, and (iii) 'voluntarily, knowingly, and intelligently made.'" *Id.* (quoting *Thomas v. Commonwealth*, 260 Va. 553, 558 (2000)). "'*[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights* and . . . we 'do not presume acquiescence in the loss of fundamental rights.'" *Johnson*, 304 U.S. at 464 (emphasis added).

"[A] trial court may 'deny a request for self-representation when the request is made for purposes of manipulation because, in such cases, *the request will not be clear and unequivocal.*'" *Edwards*, 49 Va. App. at 735 (emphasis added) (quoting *United States v. Bush*, 404 F.3d 263, 271 (4th Cir. 2005)). "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Id.* (quoting *Bush*, 404 F.3d at 271). "For the same reason, a *defendant shifting 'back and forth in his position with respect to self-representation'* may be found to have *'forfeited his right to self-representation by his vacillating positions.'"* *Id.* at 735-36 (emphases added) (quoting *Stockton v. Commonwealth*, 241 Va. 192, 203 (1991)); *Stockton*, 241 Va. at 203 (holding that Stockton forfeited his right to self-representation because "between April 1989 and May 1990, Stockton shifted back and forth in his position with respect to self-representation"). "In ambiguous situations created by a defendant's vacillation or manipulation, *we must ascribe a 'constitutional primacy' to the right to counsel* because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." *Edwards*, 49 Va. App. at 739 (emphasis added) (quoting *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir. 2000)).

Here, Webb's waiver of the right to counsel was not clear and unequivocal due to his constant vacillation between exercising his right to self-representation and exercising his right to counsel. Webb requested to represent himself in January 2018, and this request was denied. He

- 20 -

again requested to proceed *pro se* in February 2018, and the circuit court granted the request. But Webb then requested and was represented by counsel in March 2018. He reiterated his desire to be represented by counsel in May 2018. Then, yet again, Webb moved to proceed *pro se* in July 2018. The circuit court hesitantly granted Webb's motion. After representing himself at trial and being convicted, counsel represented Webb at his sentencing hearing in February 2019. Webb's going back and forth between wishing to be represented by counsel and wishing to proceed *pro se* is the very definition of vacillation, which creates ambiguity about whether Webb truly wished to proceed *pro se*.

Further, Webb's statements in court while discussing his requests to proceed *pro se* create further ambiguity about what Webb's true wishes were. In January 2018, when Webb first requested to represent himself, Webb stated, "I mean -- I mean, *I don't waive the right to my lawyer*. I do wish to represent myself . . . ." (Emphasis added). Later, at the February 2018 hearing, when Webb again requested to proceed *pro se*, the circuit court asked if Webb understood that if Webb proceeded *pro se*, his standby counsel "would not be participating in the trial." Webb stated:

> [WEBB]: I do understand, Your Honor, but you have to understand as well that my lawyer has decided to withdraw as my counsel, what, 24 hours -- a few days before my motion hearing. So if this is her wish to withdraw, it's a violation of my Sixth Amendment, I feel like, because she further just, you know, has, you know, compounded her unprofessional, you know, conduct toward my case.
>
> THE COURT: Do you wish to represent yourself?
>
> [WEBB]: Yes, I do, sir.

From these statements, it is ambiguous whether Webb truly wanted to represent himself. Although he stated that he does wish to represent himself, he also stated that he does not waive his right to a lawyer. He also indicated that he felt that his Sixth Amendment right to counsel

was not being upheld because his attorney wanted to withdraw and that was part of his decision to proceed *pro se*.

In addition, Webb's waiver of his right to counsel was not voluntarily, knowingly, and intelligently made because at the July 2018 hearing, the circuit court did not go through the "fact-intensive inquiry into [Webb]'s 'background, experience, and conduct'" that the majority acknowledges is necessary. *E.g.*, *Edwards*, 21 Va. App. at 124; *Kinard*, 16 Va. App. at 527; *Church*, 230 Va. at 215. Nor did the circuit court make Webb "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing." *Edwards*, 49 Va. App. at 739 (quoting *Iowa v. Tovar*, 541 U.S. 77, 89 (2004)). While the circuit court may have gone through the required inquiry and made Webb aware of the disadvantages of self-representation in February 2018, Webb had invoked his right to counsel in March 2018 and was represented by counsel at the July 2018 hearing. To waive his right to counsel again at his hearing, the circuit court needed to again undertake the inquiry of whether Webb's waiver was made voluntarily, knowingly, and intelligently. It did not do so.

Webb's waiver of his right to counsel was not clear and unequivocal because of Webb's vacillation between wanting to represent himself and wanting to be represented by a lawyer. Webb's vacillating statements about whether he wanted to be represented by a lawyer compounded this ambiguity. Because in "ambiguous situations created by a defendant's vacillation or manipulation, *we must ascribe a 'constitutional primacy' to the right to counsel*," *id.* (emphasis added) (quoting *Frazier-El*, 204 F.3d at 559), the circuit court erred in finding that Webb's waiver of the right to counsel was clear and unequivocal. Webb's waiver was also not voluntarily, knowingly, and intelligently made because the circuit court did not undertake the requisite inquiry to make sure that it was such. Thus, Webb's conviction should be reversed, and the case remanded for a new trial, should the Commonwealth be so advised.